UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KENIA        MONTIEL-FLORES      and
ALMANELLY      RIVERA      ZUNIGA,
individually and on behalf of all others
similarly situated,

                             Plaintiffs,

     -against-

JVK OPERATIONS LIMITED and VINOD
SAMUEL,

                          Defendants.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
19-CV-3005 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

    Presently before the Court in this wage and hour action are Plaintiffs' Kenia Montiel-Flores ("Montiel-Flores") and Almanelly Rivera Zuniga ("Zuniga," together with Montiel-Flores, the "Named Plaintiffs"): (i) Motion for Leave to File a First Amended Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), s*ee* Docket Entry ("DE") [23]; and (ii) Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA") and for Expedited Discovery, *see* DE [29].[1] By way of Complaint dated May 21, 2019, the Named Plaintiffs, individually and on behalf of all others similarly situated, commenced this action against Defendants JVK Operations Limited ("JVK") and Vinod Samuel ("Samuel," together with JVK, "Defendants"), alleging violations of the FLSA, 29 U.S.C. § 201 *et seq.* and the New

---

[1] These motions are automatically referred to this Court for a Memorandum and Order pursuant to Rule III(H)(1) of the Honorable Joanna Seybert's Individual Rules and Practices.

York Labor Law ("NYLL").  *See* Complaint ("Compl."), DE [1].  The Named Plaintiffs seek leave to amend the Complaint to:  (1) include details of Defendants':  (a) uniform timekeeping system, and (b) rounding policy based on Samuel's deposition testimony; (2) clarify the Named Plaintiffs' dates of employment, rates of pay, and hours worked following the exchange of document discovery; (3) add class claims pursuant to Fed. R. Civ. P. 23 based on Samuel's testimony as to the number of employees employed across JVK's three facilities; (4) add a claim for unpaid spread of hours wages under New York law that was inadvertently omitted from the Complaint; and (5) add claims for unpaid minimum and overtime wages, as well as for failure to timely pay wages, under New Jersey state law for similarly situated hourly employees who worked at Defendants' New Jersey facility.  *See generally* Plaintiffs' Letter Motion for Leave to File Amended Complaint ("Pl. Ltr."), DE [23].  The Named Plaintiffs further seek certification of their FLSA collective claims for a class defined as "[a]ll hourly workers who worked for JVK Operations Limited at any time between May 21, 2013 and the present."  *See generally* Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery ("Pl. Mem."), DE [29-1]; s*ee also* April 22, 2021 Declaration of Adam Sackowitz in Support of Plaintiffs' Motion for Conditional Certification, Court-Authorized Notice Pursuant to Section 216(b) of the FLSA, and Expedited Discovery ("Sackowitz Decl."), DE [29-2], Exhibit ("Ex.") C, DE [29-5]; Sackowitz Decl. Ex. D, [29-6].

For the reasons set forth herein, the Named Plaintiffs' motion to amend is granted in part and denied in part, and the Named Plaintiffs may file their Amended Complaint consistent with this Opinion to:  (1) add details of Defendants' uniform timekeeping system and rounding policy; (2) clarify the Named Plaintiffs' dates of employment, rates of pay, and hours worked following the exchange of document discovery; (3) add class claims based on Samuel's testimony as to the number of employees employed across JVK's three facilities; (4) add a claim for unpaid spread of hours wages under the NYLL; (5) add claims for unpaid minimum wage and overtime violations pursuant to the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11–56a; and (6) add a claim for failure to timely pay wages pursuant to the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11–4.4.  The motion is denied as to the Named Plaintiffs' proposed overtime claim under the NJWPL.

The Named Plaintiffs' motion for conditional certification is also granted in part and denied in part, as follows:  (1) this matter is conditionally certified as a FLSA collective action for a class defined as all hourly workers who worked for JVK Operations Limited at any time between May 21, 2016 and the present and who were subject to Defendants' automatic, fixed meal deduction and rounding policies; (2) a three-year statute of limitations will be applied, and will be tolled from the time the Named Plaintiffs filed the instant motion until the date of this Memorandum and Order; (3) the Named Plaintiffs are to revise their proposed notice to potential opt-in class members consistent with this opinion and serve the revised proposed notice on

3

Defendants, after which the parties are to file a joint motion for court approval of the notice and its dissemination; (4) the Named Plaintiffs are permitted to send the notice to potential opt-in members via first-class mail, text message and social media, as well as to post it at JVK's facilities and send a reminder notice; and (5) Defendants are to provide the Named Plaintiffs with the names, addresses, telephone numbers, known social media handles, dates of employment, titles, compensation rates, and hours worked per week for all persons employed by Defendants as hourly, non-exempt, overtime-eligible employees subject to Defendants' meal deduction and rounding policies since the date three years preceding this Memorandum and Order. Defendants will not provide Social Security numbers for potential opt-ins without a further order of this Court.

## I.     BACKGROUND

### A.  <u>Relevant Facts</u>

Unless otherwise indicated, the facts set forth herein are taken from the Complaint and proposed Amended Complaint ("PAC"), DE [23-1], as well as the Named Plaintiffs' respective declarations submitted in support of their motion for FLSA class certification.  *See* April 8, 2021 Declaration of Kenia Montiel-Flores ("Montiel-Flores Decl."), DE [30]; April 9, 2021 Declaration of Almanelly Rivera Zuniga ("Zuniga Decl."), DE [30-1], and are accepted as true for purposes of the instant motions.[2]

---

[2] The first and second causes of action, arising under the FLSA, are brought by the Named Plaintiffs on behalf of themselves and similarly situated persons who were employed since the date three years prior to the filing of the Complaint (the "FLSA Collective Plaintiffs").  The third through eighth causes of action, arising under the NYLL, are brought by the Named Plaintiffs as a class action, pursuant to

The Named Plaintiffs are both New York residents.  *See* PAC ¶ 5.  Montiel-Flores worked as a clothing sorter for New York Corporation JVK, a laundromat that provides dry cleaning and laundry services to hospitals and hotels, at its Amityville, New York location, from June 2017 through October 2017, and again from December 2017 through July 2018.  *See id.* ¶¶ 6-9, 49; Montiel-Flores Decl. ¶¶ 3-4.  JVK operates an additional facility in New Jersey.  *See* PAC ¶ 8.  Samuel, a New York resident, was at all relevant times the owner and Chief Executive Officer of JVK.  *See* PAC ¶¶ 10-11.  He was also an officer, director, shareholder and/or person in control of JVK, exercising control over the company's operations, with the ability to hire, fire and discipline employees, set their work schedules and conditions of employment, determine the rate and method of payment for employees, and maintain employment records.  *See id.* ¶ 12.  Zuniga also worked as a clothing sorter at JVK's Amityville, New York facility from June 2017 through November 29, 2017, and again from April 2018 through February 9, 2019, at which time she went by the name Gisel Juarez Diaz.  *See id.* ¶¶ 54-55; Zuniga Decl. ¶¶ 3-5.

### i. Named Plaintiffs' Allegations

The Named Plaintiffs' hours varied throughout their employment with Defendants, but they both occasionally worked more than 40 hours per week.  *See* PAC ¶¶ 51, 57; Montiel-Flores Decl. ¶ 5; Zuniga Decl. ¶ 6.  They were each typically

---

Fed. R. Civ. P. 23, on behalf of themselves and all other similarly situated individuals who were employed by Defendants in the State of New York since the date six years prior to the filing of the Complaint (the "New York Rule 23 Class").  The ninth through eleventh causes of action are brought pursuant to Fed. R. Civ. P. 23 on behalf of those Rule 23 Class members who were employed by Defendants in the State of New Jersey since the date six years prior to the filing of the Complaint (the "New Jersey Rule 23 Class," together with the New York Rule 23 Class, the "Rule 23 Classes").

afforded meal breaks of no more than 30 minutes during their shifts.  *See* PAC ¶¶ 52, 58; Montiel-Flores Decl. ¶ 8; Zuniga Decl. ¶ 9.  Defendants paid Montiel-Flores a regular hourly rate of $10 per hour in 2017, and $11 per hour in 2018.  *See* PAC ¶ 53; Montiel-Flores Decl. ¶ 6.  Zuniga received a regular hourly rate of $10 per hour in 2017, $11 per hour in 2018 and $12 per hour in 2019.  *See* PAC ¶ 59; Zuniga Decl. ¶ 7.  Defendants paid the Named Plaintiffs overtime at a rate of one and one-half times their regular hourly rate of pay for hours worked over 40 per week.  *See* Montiel-Flores Decl. ¶ 7; Zuniga Decl. ¶ 6.

While employed with Defendants, the Named Plaintiffs, the proposed FLSA Collective Plaintiffs and the Rule 23 Classes were non-exempt employees pursuant to the FLSA, NYLL, NJWHL, NJWPL, and New Jersey Wage Theft Act, ("NJWTA"),[3] and were entitled to minimum wages, overtime compensation and spread of hours pay.[4]  *See* PAC ¶ 60.  At all relevant times, all members of each of these groups were required to punch in and out for their shifts, using Defendants' electronic timekeeping system.  *See id.* ¶ 61; Montiel-Flores Decl. ¶ 9; Zuniga Decl. ¶ 10.  While they typically took daily meal breaks during their shifts, Defendants did not require the Named Plaintiffs, the FLSA Collective Plaintiffs, or the Rule 23 Classes to punch out at the start of their meal breaks or punch in at the end of their meal breaks.  *See* PAC ¶ 62.  Rather, Defendants implemented a policy under which they automatically deducted a fixed amount of time – usually 30 minutes – from these individuals' daily work

---

[3] Although the NJWTA is referenced in the PAC, it is never invoked to allege a cause of action.
[4] Plaintiffs allege spread of hours violations under the NYLL only.

hours, regardless of the actual length of their meal breaks. *See id.* ¶ 63; Montiel-Flores Decl. ¶¶ 15-16; Zuniga Decl. ¶¶ 16-17.

Defendants also implemented a policy under which they rounded these employees' daily work hours to a quarter of an hour, which occasionally resulted in the daily totals being rounded up, but "for the vast majority of days," their hours were rounded down. *See* PAC ¶¶ 64-65; Montiel-Flores Decl. ¶¶ 18-22; Zuniga Decl. ¶¶ 19-22. The fixed meal deduction and rounding policies resulted in these individuals working more hours than the number for which they were paid, and therefore they were not paid minimum wage or overtime wages equal to one and one-half times their regular hourly rates of pay for those hours actually worked over 40 in certain weeks. *See* PAC ¶¶ 66-67; Montiel-Flores Decl. ¶¶ 22-29; Zuniga Decl. ¶¶ 23-28.

### ii. FLSA Collective Plaintiffs' Allegations

The Named Plaintiffs define the FLSA Collective class as "[a]ll hourly workers who worked for JVK Operations Limited at any time between May 21, 2013 and the present." *See* Sackowitz Decl. Exs. C, D. This group alleges that they are "victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them minimum and overtime wages and other pay," as a result of Defendants' practice of rounding hours worked and deducting a fixed amount of time for meals regardless of the length of breaks. PAC ¶¶ 18-20; *see also id.* ¶¶ 85-97. The FLSA Collective Plaintiffs allege that Defendants' unlawful wage and hour practices – namely the timekeeping, meal deduction and

rounding policies described above – were uniformly implemented at all of their facilities in New York and New Jersey. *See id.* ¶ 21.

### iii. New York Rule 23 Class Allegations

The New York Rule 23 Class includes the Named Plaintiffs and at least 1,000 similarly situated non-exempt hourly employees who were employed by Defendants in New York since the date six years prior to the filing of the Complaint, and who had "the same or substantially similar" basic job duties as the Named Plaintiffs. *See id.* ¶¶ 24-25, 27.[5] Members of this class were paid in the same manner and pursuant to the same common policies, plans and practices as the Named Plaintiffs, specifically, Defendants' electronic timekeeping, meal deduction and rounding practices. *See id.* ¶ 25. The Named Plaintiffs and the New York Rule 23 Class allege that Defendants willfully failed to pay them minimum, overtime and spread of hours wages, as well as to provide proper and accurate payroll notices and wage statements, in violation of the NYLL. *See id.* ¶¶ 26, 98-131. The duties that the New York Rule 23 Class performed were not exempt from the NYLL minimum wage and overtime requirements. *See id.* ¶ 27. These employees also "frequently" worked shifts spanning more than 10 hours per day, but were not paid spread of hours pay of one additional hour at the full minimum wage rate for each day in which their shifts exceeded ten hours. *See id.* ¶ 68. Defendants failed to furnish these individuals, at the time they were hired or any time thereafter, with a notice containing their rates of pay, the designated day of pay, or other information required under the NYLL, nor

---

[5] The statute of limitations under the NYLL is six years. *See* N.Y. Lab Law §§ 198(3), 663(3).

did they provide statements accurately listing their regular and overtime rates of pay, the number of regular and overtime hours worked, gross wages, deductions, or anything else required by the NYLL. *See id.* ¶¶ 69-70. The Named Plaintiffs seek to add claims on behalf of both themselves and the New York Rule 23 Class for spread of hours violations under the NYLL. *See id.* ¶¶ 111-15.

### iv.  New Jersey Rule 23 Class Allegations

The New Jersey Rule 23 Class is comprised of those individuals who were employed by Defendants in New Jersey since the date six years prior to the filing of the Complaint. *See id.* ¶ 43.[6] Members of this class had the same or substantially similar basic job duties as the Named Plaintiffs, and were paid in the same manner and pursuant to the same common policies, plans and practices. *See id.* ¶ 44.

The New Jersey Rule 23 Class includes non-exempt employees at Defendants' New Jersey facility who, pursuant to the NJWHL, NJWPL and NJWTA, were entitled to minimum wage and overtime compensation throughout their employment. *See id.* ¶ 74. Similar to New York employees, members of the New Jersey Rule 23 class were required to punch in and out for their shifts using the same electronic timekeeping system as that which the Named Plaintiffs, the FLSA Collective Plaintiffs and the New York Rule 23 Class used. *See id.* ¶ 75. These individuals typically took daily meal breaks during their shifts, but did not punch out at the start of such breaks or punch in at the end, with Defendants automatically deducting a

---

[6] The statute of limitations for wage and hour claims in New Jersey is six years. *See* N.J. Stat. Ann. § 34:11-56a25.1; *Atis v. Freedom Mortg. Corp.*, No. CV 15-3424 (RBK/JS), 2016 WL 7440465, at *3 (D.N.J. Dec. 27, 2016).

fixed amount of time – usually 30 minutes – from their daily work hours, regardless of the actual lengths of their meal breaks.  *See id.* ¶¶ 76-77; Montiel-Flores Decl. ¶¶ 15-16; Zuniga Decl. ¶¶ 16-17.

These employees were all subject to Defendants' automatic, fixed meal deductions and rounding policies, which occasionally resulted in their daily work hours being rounded up, but "for the vast majority of days" on which they worked, their daily hours were rounded down.  *See* PAC ¶ 79; Montiel-Flores Decl. ¶¶ 18-21; Zuniga Decl. ¶¶ 19-22.  As a result, these class members worked more hours than the number for which they were paid on most days worked, and therefore were not paid minimum wages for all hours worked.  *See* PAC ¶ 80; Montiel-Flores Decl. ¶¶ 22-29; Zuniga Decl. ¶¶ 23-28.  Moreover, during weeks in which they worked more than 40 hours per week, the New Jersey Rule 23 Class was not paid overtime wages equal to one and one-half times their regular hourly rates of pay for all hours actually worked in excess of 40.  *See* PAC ¶ 81; Montiel-Flores Decl. ¶¶ 22-29; Zuniga Decl. ¶¶ 23-28.

The Named Plaintiffs seek to add causes of action on behalf of the New Jersey Rule 23 Class for minimum wage violations under the NJWHL, and for overtime violations and failure to timely pay wages under the NJWPL, for the six years prior to the Complaint being filed.  *See* PAC ¶¶ 132-50.[7]

---

[7] The statute of limitations under the NJWHL is six years.  *See* N.J. Stat. Ann. § 34:11-56a25.1.  The statute of limitations of a NJWPL claim is unclear, but some courts have held it to be six years.  *See Atis*, 2016 WL 7440465, at *3.

B. **Procedural History**

Based on the above, the Named Plaintiffs commenced this action against Defendants on May 21, 2019. *See* Compl. The original Complaint asserts seven causes of action, brought on behalf of the Named Plaintiffs and those similarly situated, for: (1) failure to pay the minimum wage in violation of the FLSA; (2) failure to pay overtime wages in violation of the FLSA; (3) failure to pay the minimum wage in violation of the NYLL; (4) failure to pay overtime wages in violation of the NYLL; (5) failure to provide payroll notices as required by the NYLL; (6) failure to provide wage statements as required by the NYLL; and (7) failure to timely pay wages in violation of the NYLL. *See generally* Compl. Defendants filed their Answer, *see* DE [6], and the Court entered a Discovery Scheduling Order, pursuant to which all discovery was to be completed by September 2, 2020. *See* DE [11]. The Court issued an Amended Scheduling Order on February 1, 2021, directing that discovery was to be completed by May 31, 2021. *See* DE [16].

On July 9, 2021, the Named Plaintiffs filed their motion for leave to amend the Complaint, s*ee* DE [23], and on August 20, 2021, they filed their motion to certify the FLSA collective action. *See* DE [29]-[30]. For the reasons set forth below, the Court grants in part and denies in part the Named Plaintiffs' motion to amend, such that the Named Plaintiffs are permitted to file their Amended Complaint to: (1) add details of Defendants' uniform timekeeping system and rounding policy; (2) clarify the Named Plaintiffs' dates of employment, rates of pay, and hours worked following the exchange of document discovery; (3) add class claims based on Samuel's testimony

11

as to the number of employees employed across JVK's three facilities; (4) add a claim for unpaid spread of hours wages under the NYLL; (5) add claims for unpaid minimum wage and overtime violations pursuant to the NJWHL; and (6) add a claim for failure to timely pay wages pursuant to the NJWPL.  The motion for leave to amend is denied as to the proposed NJWPL claim for unpaid overtime.

The Court grants in part and denies in part the Named Plaintiffs' motion for conditional certification for the reasons described herein, such that:  (1) this matter is conditionally certified as a FLSA collective action for a class defined as all hourly workers who worked for JVK Operations Limited at any time between May 21, 2016 and the present and who were subject to Defendants' automatic, fixed meal deduction and rounding policies; (2) a three-year statute of limitations is applied, and will be tolled from the time the Named Plaintiffs filed the instant motion to the date of this Memorandum and Order; (3) Defendants are directed to produce a computer-readable data file containing the names, addresses, telephone numbers, known social media handles, dates of employment, titles, compensation rates, and hours worked per week for all potential opt-in members on or before November 22, 2021; and (4) the Named Plaintiffs are authorized to disseminate the final approved notice and opt-in forms via first class mail, text message, and social media within two weeks of the Court's approval of the final version of the notice, as well as to send a reminder notice, and Defendants are directed to conspicuously post the approved notice and opt-in forms at all JVK facilities.

## II.    Motion to Amend

### A.  <u>Legal Standard Under Fed. R. Civ. P. 15(a)</u>

Rule 15(a) of the Federal Rules of Civil Procedure requires that courts freely grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a).  Rule 15(a)(2) states in pertinent part:  "Amendments Before Trial . . . a party may amend its pleading only with the opposing party's written consent or the court's leave."  *Id.* Absent undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice or futility, "the leave sought should . . . be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962) (quoting Fed. R. Civ. P. 15(a) (2)) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005) ("a Rule 15(a) motion should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.") (internal quotations and citation omitted); *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.").  The party opposing the amendment bears the burden of demonstrating good reason to deny the motion.  *Speedfit, LLC v. Woodway USA, Inc.*, No. 13-CV-1276, 2015 WL 6143697, at *3 (E.D.N.Y. Oct. 19, 2015); *see also Domni v. Cty. of Nassau,* No. CV 19-83 (JMA) (AKT), 2020 WL 7625417, at *3 (E.D.N.Y. Dec. 21, 2020).  Amendments are generally favored because "they tend to facilitate a

proper decision on the merits." *Blaskiewicz v. County of Suffolk*, 29 F.Supp.2d 134, 137 (E.D.N.Y. 1998) (internal quotations and citations omitted).  Nevertheless, it is ultimately "within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 182, 83 S.Ct. at 230).

The burden on a party seeking to amend the pleadings is heavier where the court, as here, has entered a case management order.  *See* DE [11], [16].  At that point, Rule 15's more lenient standard is balanced against Rule 16's requirement that the order "shall not be modified except upon a showing of good cause." *Gullo v. City of N.Y.*, 540 Fed. App'x 45, 46 (2d Cir. 2013).  "A finding of good cause depends on the diligence of the moving party" in attempting to comply with the order. *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003).  "In other words, the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *SEC v. Rio Tinto plc*, 17 Civ. 7994, 2020 WL 2504008, at *7 (S.D.N.Y. Mar. 9, 2020); *see In re "Agent Orange" Prod. Liab. Litig.*, 220 F.R.D. 22, 25 (E.D.N.Y. 2004), *aff'd*, 517 F.3d 76 (2d Cir. 2008) (when "parties have discovered new facts and a basis for new allegations during discovery, delay is routinely justified") (internal quotations omitted); *see also Hanlin v. Mitchelson*, 794 F.2d 834 (2d Cir. 1986) (granting plaintiff's motion to amend complaint after the completion of discovery and after defendant filed a motion for summary judgment); *Goodwin v. Advanced Tech. Labs, Inc.*, No. 83-2975, 1984 WL 49151, at *1 (E.D. Pa. Jan. 31, 1984), *aff'd*, 755 F.2d 919 (3d Cir. 1984) (allowing plaintiff to add claim "factually

identical" to claim previously asserted, as both claims necessitated the same showing from plaintiff to succeed).  Even if the movant acted diligently, the court may deny the motion based upon other factors including, in particular, prejudice to the opposing party.  *See, e.g., Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F .3d 229, 243-44 (2d Cir. 2007); *Roland v. McMonagle*, No. 12 CIV. 6331 JPO, 2014 WL 2861433, at *3 (S.D.N.Y. June 24, 2014).

### B. Analysis

The Named Plaintiffs seek leave to amend the Complaint to:  (1) add details of Defendants' uniform timekeeping system and rounding policy; (2) clarify the Named Plaintiffs' dates of employment, rates of pay, and hours worked following the exchange of document discovery; (3) add class claims based on Samuel's testimony as to the number of employees employed across JVK's three facilities; (4) add a claim for unpaid spread of hours wages under the NYLL; (5) add claims for unpaid minimum wage and overtime violations pursuant to the NJWHL; and (6) add claims for unpaid overtime wages and failure to timely pay wages pursuant to the NJWPL.  *See generally* Pl. Ltr.  Defendants oppose the Named Plaintiffs' motion on two grounds: (1) intentional and undue delay as to the claim for spread of hours violations under the NYLL; and (2) futility as to all proposed New Jersey state law claims, as well as the expansion of the Rule 23 Class claims to hourly employees employed at JVK's facility in New Jersey.  *See* Defendants' Letter Response in Opposition ('Def. Opp. Ltr."), DE [25].

15

The Named Plaintiffs assert that they only learned, through the ongoing discovery process, that "Defendants operated two (2) other plants, including a facility in New Jersey, and that the hundreds or thousands of similarly situated hourly employees who worked at these plants over the preceding three (3) to six (6) years were all subjected to the same timekeeping system and rounding policy as Plaintiffs," as well as information related to their dates of employment, rates of pay, and hours worked, and that the Named Plaintiffs promptly sought Defendants' consent to amend the Complaint upon learning of these additional potential claims. *See* Pl. Ltr. at 2. Moreover, the Named Plaintiffs maintain that Defendants will not be prejudiced by the addition of these claims because discovery is not yet complete. *See id.* As to the claim for unpaid spread of hours wages under the NYLL, the Named Plaintiffs argue that they "inadvertently omitted" the cause of action from the Complaint, but that the addition of this claim will not prejudice Defendants because the "parties have discussed [it] at length as part of Named Plaintiffs' damages calculation," and because the Named Plaintiffs do not anticipate seeking additional discovery solely on the basis of this cause of action. *See id.*

The Named Plaintiffs have established good cause for amending the Discovery Scheduling Order, which required that motions for leave to amend be filed by August 3, 2020. *See* DE [11]. As discussed below, and as required under Fed. R. Civ. P. 15, the Named Plaintiffs have demonstrated that they were diligent in bringing their motion for leave to amend and did not act in bad faith. Moreover, the proposed amendments will not prejudice Defendants and are not, save for the NJWPL claim

for unpaid overtime, futile.  Accordingly, the Named Plaintiffs' motion for leave to amend the Complaint is granted in part and denied in part.

### i. <u>Undue Delay and Good Cause</u>

The longer a plaintiff delays in filing an amended complaint, the more likely that it will unduly prejudice the defendant.  *See State Farm*, 246 F.R.D. at 147.  Where there is an "inordinate delay" in moving to amend, the moving party bears the burden of explaining the lapse in time.  *Sadhu Singh Hamdard Trust v. Ajit Newspaper Adver., Mktg. & Commc'ns, Inc.*, No. 04-cv-3503, 2009 WL 10701800, at *3 (E.D.N.Y. Jan. 8, 2009), *aff'd*, 394 F. App'x 735 (2d Cir. 2010) (internal quotations and citations omitted).  Nevertheless, "mere delay," absent a showing of bad faith or undue prejudice, does not provide a basis to deny leave to amend.  *Dennis v. Town of Babylon Hous. Assistance Agency*, No. 07-cv-0473, 2008 WL 11420049, at *4 (E.D.N.Y. Dec. 22, 2008) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)) (alteration omitted).

As noted above, to show good cause, a movant must demonstrate that it has been diligent, and that "despite its having exercised diligence, the applicable deadline could not have been reasonably met."  *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05 Civ. 3749 (KMW) (DF), 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009); s*ee also Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009).  "A party fails to show good cause when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline.'"

*Oscar v. BMW of N. Am.*, LLC, No. 09 Civ. 11 (PAE), 2011 WL 6399505, at *2 (S.D.N.Y. Dec. 20, 2011) (quoting *Sokol*, 2009 WL 2524611, at *8).

Here, the Named Plaintiffs sought leave to amend in July 2021, approximately two years after commencing the instant lawsuit and in the midst of ongoing discovery, during which they learned for the first time the pertinent information underlying certain of their requests to amend, specifically the existence of Defendants' New Jersey location and details as to the terms and conditions of the Named Plaintiffs' employment with Defendants. *See* Pl. Ltr. at 2. Acknowledging that the longer the delay, the less is required of Defendants in terms of a showing that such delay was prejudicial, *see Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993), the Court nonetheless concludes that Named Plaintiffs did not unduly delay in seeking leave to amend their Complaint.

The Named Plaintiffs were diligent in bringing this motion because they could not reasonably have filed it before the August 3, 2020 deadline for filing motions for leave to amend. *See Lee v. Kylin Mgmt. LLC*, No. 17-CV-7249 (JMF), 2019 WL 917097, at *1 (S.D.N.Y. Feb. 25, 2019). The Named Plaintiffs learned of the information on which the proposed amendments are based well after the amendment deadline and therefore could not have presented this new information to the Court any earlier, and Defendants offer no opposition to the contrary. *See* Pl. Ltr. at 2. As to the Named Plaintiffs' request to add a claim for spread of hours violations under the NYLL, Defendants concede that they consented to the addition of this cause of action at the Named Plaintiffs' request in April 2021. *See* Def. Opp. Ltr. Defendants

nevertheless now contend that they will be prejudiced by the Named Plaintiffs' request, made formally to the Court in tandem with their additional requests to amend two months after obtaining Defendants' consent and close to the end of discovery, but do not deny that no further discovery will be necessary on this claim. *See id.* As the timeline above demonstrates, the Named Plaintiffs were sufficiently diligent in bringing their motion for leave to amend.

### ii. <u>Prejudice</u>

In determining whether leave to amend should be granted, among the "most important" issues to consider is prejudice to the opposing party. *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (internal quotations omitted); *see also Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-3526 (AJN), 2016 WL 6083956, at *2 n.1 (S.D.N.Y. Oct. 17, 2016) ("[T]he existence of prejudice would counsel against granting relief under . . . rule [15]."). In analyzing "prejudice," courts consider whether the amendment would: (1) require the opponent to "expend significant additional resources to conduct discovery and prepare for trial," (2) significantly prolong the resolution of the action, or (3) "prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. N.Y. City Dept. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000). The main concern is undue or substantial prejudice – when the nonmoving party shows that it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered. *See MHANY Mgmt. Inc. v.*

*Cty. of Nassau*, 843 F. Supp. 2d 287, 341–42 (E.D.N.Y. 2012), *aff'd in part, vacated in part, remanded on other grounds*, 819 F.3d 581 (2d Cir. 2016).

Cognizant of the aforementioned considerations, the Court concludes that there is no undue prejudice that would result from the proposed amendments. These amendments arise out of new information produced during discovery and serve to clarify details as to the dates and conditions of the Named Plaintiffs' employment with Defendants, and Defendants submit no opposition as to the additional factual amendments concerning details of Defendants' employment policies and practices. Finally, Defendants do not argue in opposition that they will be prejudiced by the addition of the NJWHL and NJWPL claims. Accordingly, the Court concludes that the Amended Complaint will not prejudice Defendants.

### iii. <u>Futility</u>

"In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Rotblut v. 333 E. 66th St. Corp.*, 1996 WL 586353, *1 (S.D.N.Y. Oct. 11, 1996); *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("Although Fed. R. Civ. P. 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied."); *Gokhberg v. PNC Bank, Nat'l Ass'n*, No. 18CV06403DLIVMS, 2020 WL 7262845, at *3 (E.D.N.Y. Dec. 10, 2020) ("A court must analyze a futility argument under Rule 15(a) in the same way it would address a Rule 12(b)(6) motion to dismiss."); *Bank of New York v. Sasson*, 786 F.Supp. 349,

352 (S.D.N.Y. 1992) ("If the claims would be subject to dismissal under Fed. R. Civ. P. 12(b)(6), the court should refuse to grant leave to amend rather than assent and then await a motion to dismiss."). That is, the court must accept the facts alleged by the party seeking to amend as true and construe them in the light most favorable to that party.

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65 (internal quotations, citations and alterations omitted). Unless a plaintiff's well-pleaded allegations of fact have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570, 127 S.Ct. 1974; *Iqbal*, 556 U.S. at 680, 129 S.Ct. at 1950–51. "A court is not required to make a final determination on the merits of a proposed claim or defense, but instead, must only satisfy itself that the claim or defense is colorable and not

frivolous." *Domni v. Cty. of Nassau*, No. CV 19-83 (JMA) (AKT), 2020 WL 7625417, at \*4 (E.D.N.Y. Dec. 21, 2020) (internal quotations and citations omitted).  Applying the liberal standards under Fed. R. Civ. P. 15(a), the Court concludes that, other than the proposed claim for overtime violations pursuant to the NJWPL, Named Plaintiffs' causes of action are sufficiently stated, and adding those claims, with the exception of the NJPWL claim for overtime violations, would not be futile.[8]

### i.  Proposed NYLL Claim for Failure to Pay Spread of Hours

### 1.  Employer Status Under the NYLL

"To be liable under the . . . NYLL, a person must be an 'employer.'"  *Bravo v. Established Burger One LLC*, No. 12 cv 9044 (CM), 2013 WL 5549495, at \*5 (S.D.N.Y. Oct. 8, 2013) (citations omitted).  The pleading standard applicable for employer status under the NYLL is analytically identical to its federal law counterpart, the FLSA.  *See Cordova v. SCCF, Inc.*, No. 13CIV5665-LTS-HP, 2014 WL 3512838, at \*4 (S.D.N.Y. July 16, 2014) (noting the "nonexclusive and overlapping set of factors to ensure that the . . . test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA and the NYLL . .

---

[8] Defendants argue that the expansion of the class claims to hourly employees employed across other JVK facilities pursuant to Fed. R. Civ. P. 23 would also be futile because Samuel's knowledge as to JVK's timekeeping system and policies, testified to during his deposition as an individual defendant and not a representative of JVK, "was limited to what the company's operations manager . . . told [him] in a meeting held in 2019 regarding the lawsuit filed by Plaintiffs," and therefore not "a binding response on behalf of the corporate defendant regarding its actual practices and procedures."  *See* Def. Opp. Ltr. at 1-2.  Defendants further maintain that the Named Plaintiffs have no knowledge as to the start and stop times of all hourly employees, nor how any rounding practices may have affected them. *See id*. at 2-3.  Nevertheless, such possibilities do not render the Named Plaintiffs' expansion of the class futile, as their request is based on information learned during discovery and the causes of action brought on behalf of the class are adequately pled.  Any questions of fact in this regard are improper for resolution at this stage.

. are relevant at the pleading stage when there is a question as to whether plaintiffs have . . . adequately pled that each defendant qualifies as their 'employer' under the FLSA and the NYLL.") (internal quotations and citations omitted).  "Employer" is defined in the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and in the NYLL as "any individual . . . acting as employer," N.Y. Lab. Law § 651(6).  To determine whether an individual is an "employer" under both statutes, courts in this circuit consider the "economic reality" of the employer-employee relationship.  *Bravo*, 2013 WL 5549495, at *6.  Relevant factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id*.

The PAC adequately alleges that Defendants are employers under the statutes for purposes of adding a claim for spread of hours violations under the NYLL.  The Named Plaintiffs maintain that they were directly employed by JVK, and that Samuel, at all relevant times, was an officer, director, shareholder and/or person in control of JVK, that he exercised "significant control" over the company's operations and that he had the authority to hire, fire and discipline employees, set employees' work schedules and conditions of employment, determine the rate and method of payment, and maintain employee records.  *See* PAC ¶ 12.  These allegations satisfy the statutes' requirements.

### 2.  Failure to Pay Spread of Hours Under the NYLL

The Named Plaintiffs' proposed fifth cause of action maintains that Defendants failed to pay the class spread of hours compensation in violation of the NYLL.  Under the NYLL, employees are entitled to recover compensation for an extra hour of work at the minimum wage for every day that they work an excess of ten hours.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.  "New York defines spread of hours as the length of the interval between the beginning and end of an employee's workday, which includes working time plus time off for meals plus intervals off duty."  *Morales v. Mw Bronx*, Inc., 2016 WL 4084159, at *7 (S.D.N.Y. Aug. 1, 2016) (internal quotation marks and citation omitted).  The NYLL's spread of hours provision applies only to employees who earn the minimum wage or less.  *See Perez Campos v. Quentin Mkt. Corp.*, 2018 WL 9945754, at *5 (E.D.N.Y. Oct. 17, 2018); *see also Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 474 (E.D.N.Y. 2011) ("[T]he spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law.").  While Defendants paid the Named Plaintiffs at a rate higher than the minimum wage, the Named Plaintiffs maintain that, as a result of Defendants' automatic, fixed meal deduction and rounding policies, they were ultimately effectively paid below minimum wage.  The Named Plaintiffs further allege that throughout their employment, despite frequently working a spread of greater than ten hours per day, they were not paid for an extra hour at the applicable New York minimum wage rate.  *See* PAC ¶ 68.  Accordingly, the Court finds that the Named Plaintiffs have adequately pled a spread of hours claim under the NYLL.

### ii. Proposed NJWHL Claims for Minimum Wage and Overtime Violations

"New Jersey courts have repeatedly emphasized that the NJWHL is to be construed broadly, and that it was purposely drafted in parallel with the FLSA." *Thompson v. Real Estate Mortg. Network, Inc.*, 106 F. Supp. 3d 486, 490-91 (D.N.J. 2015) ("The FLSA includes a right of action to recover withheld overtime payments; the principle of parallel construction suggests that the NJWHL be interpreted the same way."). Under the FLSA, an employee who works over forty hours in a single work week is entitled to be paid for those excess hours at "a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). To plead an FLSA overtime violation, "a plaintiff must sufficiently allege 40 hours of work in a given workweek," as well as "some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

The NJWHL requires employers to pay employees a minimum wage, currently set at $12.00 per hour. N.J. Stat. Ann. § 34:11-56a4. The minimum wage rate as of 2013, six years prior to the filing of the Complaint, has increased as follows: (1) $7.25 per hour in 2013; (2) $8.25 per hour in 2014; (3) $8.38 per hour in 2015 and 2016; (4) $8.44 per hour in 2017; (5) $8.60 per hour in 2018; and (6) $10.00 per hour in 2019. *See* https://www.minimum-wage.org/new-jersey. "To state a . . . minimum wage claim, it is sufficient for a plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount

owed per pay period." *Tackie v. Keff Enters. LLC*, No. 14-CV-2074 JPO, 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014) (applying FLSA).

The PAC alleges that the N.J. Rule 23 Class worked more than 40 hours in certain weeks, but were not paid overtime wages equal to one and one-half times their regular hourly rates of pay for hours in excess of 40. *See* PAC ¶ 80. The Named Plaintiffs further maintain that Defendants rounded the N.J. Rule 23 Class' hours to a quarter of an hour and deducted a fixed amount for meal breaks regardless of the actual length of break taken, which often resulted in their hours being rounded down. *See id.* ¶¶ 62-65, 78-80. As such, the N.J. Rule 23 Class often worked more hours than the number for which they were paid, and therefore were not paid minimum or overtime wages for all of the hours they worked. *See id.* ¶¶ 66-67. Accordingly, the Named Plaintiffs adequately allege Defendants' minimum wage and overtime violations under the NJWHL.

### iii. Proposed NJWPL Claims for Overtime Violations and Failure to Pay Timely Wages

The Named Plaintiffs seek to add two claims under the NJWPL, for: (1) overtime violations; and (2) failure to pay timely wages. *See* PAC ¶¶ 138-50. The NJWPL governs the manner, mode, and time of wage payment, as well as when an employer may withhold part of an employee's paycheck. *See* N.J. Stat. Ann. § 34:11–4.1 *et seq.* The NJWPL defines wages as "direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition

thereto."   N.J. Stat. Ann. § 34:11–4.1.   Under the statute, employers may not "withhold or divert any portion of an employee's wages unless" the employer is "required or empowered to do so by New Jersey or United States law."   N.J. Stat. Ann. 34:11-4.4; *see also Snyder v. Diez & Watson, Inc.*, 837 F. Supp. 2d 428, 445 (D.N.J. 2011).   An employer may lawfully withhold or divert a portion of an employee's wages in certain instances, such as for "[c]ontributions authorized either in writing by employees, or under a collective bargaining agreement, to employee . . . pension, retirement, and profit-sharing plans."   N.J. Stat. Ann. § 34:11–4.4(b)(1).   Moreover, the NJWPL "is designed to protect an employee's wages and to assure timely and predictable payment."   *Kennedy v. Weichert Co.*, No. A-0518-19, 2021 WL 2774844, at *3 (N.J. Super. Ct. App. Div. Jul. 2, 2021); *see also Rodriguez v. Canada Dry Bottling Co., L.P.*, No. 14-6897 (KSH) (CLW), 2015 WL 5770502, at *3 (D.N.J. Sept. 30, 2015) ("[C]laims that wages have not been timely paid or that inappropriate deductions by the employer have been made . . . are brought under the provisions of the NJWPL").   Under the statute:

> Except as otherwise provided by law, every employer shall pay the full amount of wages due to his employees at least twice during each calendar month, on regular paydays designated in advance by the employer, in lawful money of the United States or with checks on banks where suitable arrangements are made for the cashing of such checks by employees without difficulty and for the full amount for which they are drawn. An employer may establish regular paydays less frequently than semimonthly for bona fide executive, supervisory and other special classifications of employees provided that the employee shall be paid in full at least once each calendar month on a regularly established schedule.

N.J. Stat. Ann. § 34:11-4.2.

### 1. Overtime Violations Under the NJWPL

The Named Plaintiffs' proposed claim for overtime violations under the NJWPL fails as a matter of law.  The NJWPL "regulates deductions from an employee's wages," while the NJWHL "sets the amount for minimum wage and overtime rates."  *Rodriguez*, 2015 WL 5770502, at *3.  "Generally, claims for failure to pay overtime are brought under the NJWHL."  *Mitchell v. C & S Wholesale Grocers, Inc.*, Civ. No. 10-2354 (JLL), 2010 WL 2735655, at *5 (D.N.J. July 8, 2010); *see Rodriguez*, 2015 WL 5770502, at *3.  In *Atis v. Freedom Mortgage Corp.*, Civ No. 15-3424 (RBK/JS), 2016 WL 7440465, at *3 (D.N.J. Dec. 27, 2016) (internal citations omitted), the court held:

> Reading the plain language of the NJWPL, the Court finds that the statute does not support a claim for unpaid overtime wages.  The statute regulates the mechanics of when and how wages must be paid. . . . Plaintiff, however, attempts to shoehorn its claim under the NJWPL's provision prohibiting the withholding or diverting of wages.  Section 34:11-4.4, however, concerns the permissibility of withholdings and diversions for benefits, securities, savings, charities, and the like— categorically distinct from overtime pay.  Further, courts in New Jersey and this District have generally held that claims for overtime should be brought under the NJWHL and not the NJWPL.  The New Jersey Appellate Court found an employee could not bring an action for unpaid overtime under the NJWPL's provision on withholding or diverting wages.

*See also Piscopo v. Pub. Serv. Elec. & Gas Co.*, Civ No. 13-552 (ES), 2014 WL 3014284, at *5 n.6 (D.N.J. July 3, 2014) ("Plaintiff seems to be seeking overtime payment, which is not addressed by the NJWPL."); *Mitchell*, 2010 WL 2735655, at *5 ("[C]laims for failure to pay overtime are brought under the NJWHL.").  Accordingly, the Named Plaintiffs' proposed claim for unpaid overtime under the NJWPL may not proceed,

and the Named Plaintiffs' motion for leave to amend to add an overtime claim under the NJWPL is denied.

### 2. Failure to Timely Pay Wages Under the NJWPL

The NJWPL appears to require nothing more at the pleading stage beyond the presence of an employer-employee relationship and an allegation of unpaid wages, and appears to allow for a private right of action. *See Carita v. Mon Cheri Bridals, LLC*, 10–cv–2517, 2012 WL 2401985, at *10–12 (D.N.J. June 25, 2012) (finding a private right of action valid under the NJWPL).

As set forth above, the PAC adequately pleads an employer-employee relationship between the Named Plaintiffs and those similarly situated, on the one hand, and Defendants on the other. The Named Plaintiffs further allege that Defendants failed to pay the N.J. Rule 23 Class the full amount of wages due to them "at least twice during each calendar month, on regular paydays designated in advance." *See* PAC ¶ 146. The PAC additionally maintains that Defendants failed to pay the N.J. Rule 23 Class all wages due to them "not later than the regular payday for the pay period in which they were terminated." *See id.* ¶ 147. These allegations are sufficient to state a NJWPL claim, and leave to amend to add this cause of action is granted.

Accordingly, the Court grants in part and denies in part the Named Plaintiffs' motion for leave to amend the Complaint. Specifically, the Named Plaintiffs are granted leave to: (1) add details of Defendants' uniform timekeeping system and rounding policy; (2) clarify the Named Plaintiffs' dates of employment, rates of pay,

and hours worked following the exchange of document discovery; (3) add class claims based on Samuel's testimony as to the number of employees employed across JVK's three facilities; (4) add a claim for unpaid spread of hours wages under the NYLL; (5) add claims for unpaid minimum wage and overtime violations pursuant to the NJWHL; and (6) add a claim for failure to timely pay wages pursuant to the NJWPL.

## III.   Conditional Certification Pursuant to Section 216(b) of the FLSA

### A. Legal Standard

The FLSA permits employees to maintain a collective action "for and [o]n behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). Courts in the Second Circuit apply a two-step analysis to determine whether a collective action under Section 216(b) of the FLSA should be certified. *Id.* at 554-55. First, the Court evaluates whether the proposed class members are "similarly situated" to the Named Plaintiffs. *See Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001). If the Court finds that the putative class is sufficiently similarly situated, the action will be conditionally certified and each class member may then consent in writing to "opt-in" to the litigation. *Id.* (citing 29 U.S.C. § 216(b)). In determining whether the putative class is similarly situated, the critical inquiry is "not whether plaintiff's job duties are identical to other potential opt-in Named Plaintiffs, but rather, whether the proposed Named Plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." *Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 656 (S.D.N.Y. 2017) (internal quotation marks and citation omitted). The second step generally occurs following completion

of discovery and requires examination of the evidentiary record to ascertain whether the opt-in Named Plaintiffs are, in fact, similarly situated. *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009). The present motion concerns only the first step of the certification process—whether the proposed class members are similarly situated such that conditional certification is appropriate.

At the conditional certification stage, "the evidentiary standard is lenient." *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58 (E.D.N.Y. 2011); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("The burden for demonstrating that potential Named Plaintiffs are similarly situated is very low at the notice stage") (internal quotation and citation omitted). Named Plaintiffs seeking conditional certification "need only make a modest factual showing sufficient to demonstrate that they and potential Named Plaintiffs together were victims of a common policy or plan that violated the law." *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (internal quotation and citation omitted). "This low burden is consistent with the broad remedial purpose of the FLSA." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013) (internal quotation and citation omitted).

At the conditional certification stage, a movant is not required to establish an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential Named Plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-cv-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)); *see also*

*Vasquez v. Vitamin Shoppe Indus., Inc.*, No. 10-cv-8820, 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011) (internal citation omitted) ("Courts will certify broad classes where there is some showing that all members of the putative class performed the same duties ... or that the employer had uniform company-wide employment practices."); *Sexton v. Franklin First Fin., Ltd.*, No. 08-cv-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) ("'[N]othing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required") (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). "It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named Named Plaintiffs."  *Cano v. Four M Food Corp.*, No. 08-cv-3005, 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009).

Moreover, at this stage, "the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010) (quoting *Francis v. A & E Stores, Inc.*, No. 06-cv-1638, 2008 WL 2588851, at *2 (S.D.N.Y. June 26, 2008), *report and recommendation adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) (internal quotation omitted)); *see also Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008) ("The standard in this circuit is clear; the merits of Named Plaintiffs' claim are not at issue in a motion for conditional certification").   The determination is typically based on the pleadings and declarations submitted in support of the motion.  *See Sharma v. Burberry Ltd.*, 52 F.

Supp. 3d 443, 452 (E.D.N.Y. 2014) ("[C]ourts in the Second Circuit routinely grant conditional certification for overtime claims based on the statements of the named plaintiff(s) and other supporting affidavits").

### B. Analysis

#### i. **Conditional Certification**

The Named Plaintiffs move to certify the following FLSA collective action: all hourly workers who worked for JVK Operations Limited at any time between May 21, 2013 and the present.

In this case, the Named Plaintiffs have made a sufficient factual showing that they and the potential collective action members – other hourly JVK employees who have purportedly been denied certain wages by Defendants – were together victims of a common compensation policy that violated the FLSA. The PAC alleges that the Named Plaintiffs and similarly situated JVK employees regularly worked at least 40 hours per week. *See* PAC ¶ 67. Defendants tracked employee hours by the use of a punch card time clock system, and rounded employees' daily work hours to a quarter of an hour, often rounding down, resulting in employees working more hours than those for which they were paid. *See* PAC ¶¶ 61, 64-67. Additionally, Defendants automatically deducted a fixed amount of time from employees' daily work hours for meals, regardless of the actual length of any breaks, which also resulted in underpayment of wages where employees' meal breaks lasted less than the amount deducted. *See id.* ¶ 63. As a result, employees were not paid for all hours worked,

and when they worked more than 40 hours in a week, they were not fully compensated for overtime.  *See id.* ¶ 67.

These allegations are supported by the Named Plaintiffs' declarations submitted in support of the instant motion, each of which describes Defendants' practice of improperly rounding employees' hours and meal deductions, and therefore improperly withholding wages.  *See* Montiel-Flores Decl. ¶¶ 9-18, 23-27; Zuniga Decl. ¶¶ 10-19, 23-26.  The declarations also name several JVK employees who are subject to Defendants' alleged wage violations despite not being Named Plaintiffs.  *See* Montiel-Flores Decl. ¶ 23 (naming 12 JVK employees subject to purported overtime violations); Zuniga Decl. ¶ 24 (same).  In addition, the Named Plaintiffs cite to Samuel's deposition testimony that the same timekeeping policies were employed across all of JVK's facilities in New York and New Jersey, and Samuel's declaration references a time clock with facial recognition software that "all hourly employees are required to punch in and out on."  *See* Pl. Mem. at 17; July 29, 2021 Declaration of Vinod Samuel ("Samuel Decl."), DE [31-1], ¶ 16.  The Named Plaintiffs have therefore satisfied the lenient standard applicable at this stage by submitting evidence of a uniform, company-wide practice of wage and timekeeping violations sufficient to warrant conditional certification.  *See Vasquez*, 2011 WL 2693712, at *3 (noting that "[c]ourts will certify broad classes where there is some showing . . . that the employer had company-wide employment practices").

The Court is unpersuaded by Defendants' contentions that the time at issue is not compensable and that the Named Plaintiffs have failed to establish a pattern and

practice of FLSA violations.  As noted above, such factual arguments are improper at this juncture, and need not be analyzed on a motion for conditional certification. Accordingly, the Court conditionally certifies this matter as a FLSA collective action.[9]

### ii.  Notice Period

After granting conditional certification, the Court must determine the appropriate timeframe applicable to the class.  In this regard, the Court concludes that a three-year window is warranted, and that the statute of limitations should be tolled from the time the Named Plaintiffs filed the instant motion.

### 1.  Applicable Notice Period

The Named Plaintiffs seek permission to include as potential collective action members all JVK employees who worked for Defendants at any time since May 21, 2013.  *See* Pl. Mem. at 14; Proposed Order, DE [29-5].  A six-year notice period is appropriate, the Named Plaintiffs contend, because their NYLL claims are subject to a six-year statute of limitations, *see* N.Y. Lab. Law §§ 663(1), (3), and therefore, even if claims are untimely under the FLSA, they may "shed light on the appropriateness of certifying a class action under the NYLL."  *See* Pl. Mem. at 17.  The Court disagrees.

The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.  See 29 U.S.C. § 255(a).

---

[9] Although Fed. R. Civ. P. 23 class certification is not currently at issue, the Court cautions the Named Plaintiffs that, while they have standing to bring a class action on behalf of unnamed, yet-to-be - identified class members from New Jersey under that state's wage and hour laws, the issue of predominance may impede Rule 23 class certification in the future.  *See, e.g.*, *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93-94 (2d Cir. 2018); *Oliver v. Am. Express Co.*, No. 19CV566NGGSMG, 2020 WL 2079510, at *12 (E.D.N.Y. Apr. 30, 2020); *In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 376-77 (E.D.N.Y. 2010).

"At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Jie Zhang v. Wen Mei, Inc.*, 14-cv-1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015) (citing *Summa*, 715 F. Supp. 2d at 388); *see also Alvarez v. IBM Restaurants, Inc.*, 839 F. Supp. 2d 580, 587-88 (E.D.N.Y. 2012) ("The Named Plaintiffs have alleged willfulness in their Complaint . . . and the Defendants deny these allegations.  Courts in this circuit have generally held that where willfulness is in dispute, a three-year statute of limitations applies at the conditional certification stage."); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 n.2 (E.D.N.Y. 2005) (finding allegation of willful violation justified notice based on a three-year statute of limitations period). Here, the PAC repeatedly alleges that Defendants willfully violated the FLSA.  *See, e.g.*, PAC ¶¶ 18-19, 22, 28, 47, 72.  Accordingly, the Named Plaintiffs have sufficiently alleged willful conduct for the purposes of conditional certification.

The next issue is whether a three-year or a six-year state law notice period is appropriate.  District courts in this Circuit have reached inconsistent conclusions with respect to this issue.  *Compare Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) ("Authorizing notice for a time period twice the length of the maximum FLSA limitations period would not serve the efficiency goal articulated in *Hoffmann*[*-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)]."), *with Cano*, 2009 WL 5710143, at *10 ("[T]his Court finds it prudent and expedient in this case to allow a six-year period to apply, even if some recipients of the notice will have claims that are time-barred under the FLSA.").  The more recent trend, however, is

to "approve three-year notice periods to avoid the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to [potential] plaintiffs whose claims may well be time-barred." *Mongiove v. Nate's Corp.*, No. 15-cv-1024, 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016) (quoting *Sanchez v. El Rancho Sports Bar Corp.*, No. 13-cv-5119, 2014 WL 1998236, at *1 (S.D.N.Y. May 13, 2014) (internal quotation omitted)); *see also Hamadou*, 915 F. Supp. 2d at 668 (limiting notice period to three years); *Lujan v. Cabana Management, Inc.*, 10-cv-755, 2011 WL 317984, at *9 (E.D.N.Y. 2011) (same).

The instant motion seeks certification only with respect to the Named Plaintiffs' FLSA claims, and the Named Plaintiffs have not yet moved for class certification of their state law claims pursuant to Fed. R. Civ. P. 23. Thus, the Proposed Notice should be directed only to those persons eligible to opt-in to the FLSA collective action. It would be unnecessarily confusing for employees who may be ineligible for the FLSA opt-in class because their claims are time-barred to receive a notice that pertains only to the FLSA claims. This concern weighs against notice going back six years, rather than three years. Accordingly, the Court limits the timeframe for notification to the three-year period applicable to the Named Plaintiffs' FLSA claims.

## 2. Equitable Tolling of the Statute of Limitations

The Named Plaintiffs further request that the FLSA statute of limitations be tolled from the date on which the instant motion was filed until such time that the

Named Plaintiffs are able to send notice to potential opt-in plaintiffs. *See* Pl. Mem. at 17-19. According to the Named Plaintiffs, the parties spent "considerable" time attempting to settle this matter and, once it became clear that settlement was unlikely, engaged in discovery. *See id.* The Named Plaintiffs moved for conditional certification promptly after receiving Defendants' discovery responses. *See id.* Defendants do not oppose the request to toll the statute of limitations.

Under the FLSA, "the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." *Garriga v. Blonder Builders Inc.*, No. 17-cv-0497, 2018 WL 4861394, at *10 (E.D.N.Y. Sept. 28, 2018) (citing 29 U.S.C. § 256(b)). The statute of limitations is not tolled upon the filing of the complaint, as it is in a class action. *Rotari v. Mitoushi Sushi, Inc.*, 448 F. Supp. 3d 246, 254 (E.D.N.Y. 2020).

In the FLSA conditional certification context, however, a district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the Plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief. *See Viriri*, 320 F.R.D. at 355 (alteration omitted) (quoting *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014)); *see also McDermott v. Fed. Sav. Bank*, No. 14-CV-6657 (JMA) (GRB), 2018 WL 6718599, at *3 (E.D.N.Y. Sept. 28, 2018) ("[I]n determining whether to apply the doctrine of equitable tolling, a court must determine 'whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have

tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003), *as amended* (July 29, 2003))), *report and recommendation adopted*, No. 14-CV-6657 (JMA) (GRB), 2019 WL 1305992 (E.D.N.Y. Mar. 22, 2019). Applying this standard, courts most commonly toll the FLSA limitations period "where the defendant has concealed the existence of a cause of action from the Named Plaintiffs." *Mark v. Gawker Media LLC*, No. 13-CV-4347 (AJN), 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2014) (collecting cases). Courts may also permit tolling of the limitations period, however, "during the period the court takes to decide the conditional certification motion." *Viriri*, 320 F.R.D. at 355 (collecting cases).

Under the present circumstances, the Court concludes that it is appropriate to toll the three-year statute of limitations for the period between the filing of the motion for conditional certification and the date of this Memorandum and Order. The record is clear that the Named Plaintiffs diligently pursued conditional certification, filing the instant motion upon receiving Defendants' discovery responses, after a period of settlement discussions. Accordingly, the statute of limitations is tolled from the date on which the instant motion was filed until the date of this Memorandum and Order.

### iii.  **Proposed Notice**

The Named Plaintiffs also move for an order authorizing dissemination of a proposed notice, in both English and Spanish, to all nonexempt JVK employees who were employed by Defendants since May 21, 2013. *See* Pl. Mem. at 13-15; Proposed Order. With respect to the content of the proposed notice, the Named Plaintiffs

contend that the Court should approve the version attached to their motion, *see* DE [29-6], Ex. D ("Proposed Notice"), because it "achieves 'the goals of the notice: to make as many potential [opt-in] plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burden on the defendants.'" *See* Pl. Mem. at 13-14.  The Named Plaintiffs further request approval of a "proposed reminder postcard," *see* [29-7], Ex. E, to notify potential plaintiffs "that their right to join this lawsuit is limited," thereby promoting the FLSA's "broad remedial purpose, as well as the goal of court-authorized notice, by promoting efficient case management through notification and joinder of claims."  *See* Pl. Mem. at 14.  Finally, the Named Plaintiffs request approval of a notice to be disseminated to potential plaintiffs via text message and social media, as the "most practical method of distributing notices" due to possible issues with first class mail deliveries due to the COVID-19 pandemic and otherwise.  *See id.* at 10-13.  In order to serve the Proposed Notice on and follow up with the potential opt-in members, the Named Plaintiffs seek from Defendants the names, addresses, phone numbers, email addresses, social media handles, social security numbers, dates of employment, titles, compensation rates, and hours worked per week for all persons employed by Defendants as hourly, non-exempt, overtime-eligible employees since the date six years preceding this Memorandum and Order.  Defendants do not object to any of the Proposed Notice.  Rather, Defendants request that they be permitted to supply the Named Plaintiffs with potential opt-in members' Social Security numbers only in the

event that the Named Plaintiffs are unable to reach potential opt-in plaintiffs by the means listed above.

Neither the FLSA nor any court has expressly stated what form court-authorized notice should take or what provisions the notice should contain. *See Moore*, 276 F.R.D. at 58 (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)).  To the contrary, it is well-settled that "[t]he form of a court-authorized notice and provisions contained in it are left to the broad discretion of the trial court."  *Sobczak*, 540 F. Supp. at 364; *Hernandez v. Immortal Rise, Inc.*, No. 11-cv-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) ("[C]ourts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions [of the FLSA] and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate") (internal quotation and citation omitted).

Consistent with this discretion, the Court concludes that a collective action notice should be disseminated to potential opt-in members.  Nevertheless, the Court directs that the Proposed Notice be revised to reflect the rulings in this Memorandum and Order.  In addition, the notice shall explain that this case – and any party's participation in it – is a matter of public record.  Finally, consistent with the discussion above, the class should be redefined to only include the period from May 21, 2016 through the present.

Other than these modifications, the Court has reviewed the Proposed Notice, the proposed reminder postcard, and the proposed text message in their entireties and, save the issues described above, approves their contents in both English and Spanish. *See Valerio v. RNC Indus.*, LLC, 314 F.R.D. 61, 76, (E.D.N.Y. 2016) ("Generally, courts permit notice to be "translated into the mother tongue of non-English speaking groups of potential Named Plaintiffs.""). Accordingly, once the Named Plaintiffs have edited the notice to reflect the above requirements, they should serve a draft on Defendants on or before November 22, 2021. Defendants should thereafter serve any objections, or give their consent, on or before December 6, 2021. The parties should then file a joint motion for Court approval of the notice's dissemination on or before December 20, 2021. That motion should attach the final version of the draft notice along with a proposed opt-in form. Upon the Court's approval of the final notice, the Named Plaintiffs shall distribute the same within two weeks. Finally, all opt-in forms must be filed with the Court within 60 days of the final notice's dissemination.

### 1.  <u>Distribution of the Notice</u>

With respect to the manner of distribution, the Named Plaintiffs seek permission to send the Proposed Notice, along with consent-to-join forms, via United States Postal Service first-class mail, as well as to post it at each of JVK's facilities and to send a message via SMS text message and messaging and social media applications such as "WhatsApp, Facebook Messenger, Instagram, Snapchat, or other

applications." *See* Pl. Mem. at 10-13. Defendants do not object to any of these forms of dissemination.

The Court will permit Named Plaintiffs to both send the notice to potential opt-in members via first-class mail and post it at JVK's facilities. *See Cabrera v. Stephens*, No. 16-cv-3234, 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail") (internal quotations and citations omitted); *Sanchez*, 2016 WL 4533574, at *7 ("[F]irst class mail and email may both serve as efficient means of ensuring that potential opt-in Named Plaintiffs receive timely notice, and are therefore approved"); *Jackson*, 298 F.R.D. at 170 (granting "authorization to issue a proposed notice to potential class members by mail and e-mail" and "authorization to re-mail notices that are returned as undeliverable"). The Named Plaintiffs are further permitted to send a reminder notice. *See Chhab v. Darden Restaurants, Inc.*, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Both parties cite case law either authorizing or rejecting the issuance of a reminder notice. Given that notice under the FLSA is intended to inform as many potential Named Plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate.") (internal citations omitted). In line with recent decisions concluding that dissemination of notices to plaintiffs via text message is appropriate, the Named Plaintiffs are permitted to provide notice accordingly. *See, e.g.*, *Millin v. Brooklyn Born Chocolate, LLC*, No. 19CV3346ENVRER, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020) ("There is no

credible reason why notice should not be provided by email or text message, especially given the broad remedial purpose of the FLSA."); *Velasquez v. Digital Page Inc.*, No. 11-CV-3892 (LDW) (AKT), 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (finding it proper for courts in collective actions to order discovery of telephone numbers and email addresses of potential collective members) (collecting cases).

Ordering production of social media information, such as WhatsApp, WeChat, and Facebook usernames, is relatively novel, with only a few courts in this Circuit addressing that type of information specifically and coming to inconsistent conclusions. *Compare Ni v. Red Tiger Dumpling House Inc*, No. CV193269GRBAKT, 2020 WL 7078533, at *11 (E.D.N.Y. Nov. 30, 2020) (declining to permit plaintiff to disseminate notice through social media because he did not provide any justification to deviate from the traditional methods generally accepted by courts for disseminating notice to the putative collective members); *Chui v. Am. Yuexianggui of LI LLC*, No. CV185091SJFAKT, 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020) (same); *Qian Xiong Lin v. DJ's Int'l Buffet Inc.*, No. CV 17-4994 (JS)(AYS), 2019 WL 5842798, at *5 (E.D.N.Y. Nov. 7, 2019) (posting on social media and websites "would be overbroad and not likely to materially improve the chances of notice."), *with Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020) (ordering defendants to provide social media information despite possible privacy concerns); *Ting Qiu Qiu v. Shanghai Cuisine, Inc.*, No. 18 CIV. 5448 (ER), 2019 WL 6002371, at *4 (S.D.N.Y. Nov. 14, 2019) (finding production of potential opt-in plaintiffs' WhatsApp, WeChat and/or Facebook information to be appropriate); *Jian Wu v. Sushi Nomado of*

44

*Manhattan, Inc.*, No. 17CV04661 (PGG) (DF), 2019 WL 3759126, at *12 (S.D.N.Y. July 25, 2019) (granting request for the production of potential opt-in plaintiffs' social media information). The Court is mindful of possible privacy concerns, but also must consider potential opt-in members' interest in possibly joining the litigation, the possibility that some members may not have phone numbers or stable addresses, and efficient administration of this case. On balance, the Court finds it is appropriate for Defendants to provide social media information, and that notice can be provided accordingly.

## 2. Production of Contact Information

In addition to the relief discussed above, the Named Plaintiffs seek an order directing Defendants to provide their counsel with a computer-readable data file containing the names, addresses, phone numbers, email addresses, social media handles, social security numbers, dates of employment, titles, compensation rates, and hours worked per week for all persons employed by Defendants as hourly, non-exempt, overtime-eligible employees since the date six years preceding this Memorandum and Order. *See* Pl. Mem. at 15-16.

It is typically appropriate for courts in FLSA collective actions to order the discovery of contact information of potential opt-in Named Plaintiffs. *See Qiang*, 447 F. Supp. 3d at 97 (granting request for telephone numbers, e-mail addresses, as well as social media information); *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-cv-1491, 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015) ("Disclosure of the names, addresses, telephone numbers, and email addresses of putative class members is

commonplace in this district"); *Ack v. Manhattan Beer Distributors, Inc.*, No. 11-cv-5582, 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) ("Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions"); *Lynch v. United Servs. Auto. Ass'n*, 491 F.Supp.2d 357, 371–72 (S.D.N.Y. 2007) (requiring the defendants to identify, for each similarly situated potential plaintiff, his or her "name, address, telephone number, dates of employment as a special investigator, location of employment, date of birth, and last four digits of [his or her] Social Security Number").

Further, some courts in this Circuit have allowed the production of Social Security numbers or at least the last four digits thereof.  *See, e .g., Fang v. Zhuang*, No. 10 Civ. 1290(RRM)(JMA), 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010) (collecting cases in which courts have "ordered production of the Social Security numbers of prospective plaintiffs in FLSA actions"; requiring such production, pursuant to a protective order); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 339 (S.D.N.Y. 2010) (in the context of a Fed. R. Civ. P. 23 class action, requiring "disclosure of putative class members' social security and telephone numbers"); *Lynch*, 491 F.Supp.2d 357, 371–72.  Other courts in this Circuit "decline to allow discovery of social security numbers due to privacy concerns, [but] it is generally accepted that such discovery is permitted where Plaintiff can demonstrate that names and contact information are insufficient to effectuate notice." *Whitehorn*, 767 F.Supp.2d at 448 (requiring the defendants to produce Social Security numbers, pursuant to a protective order, for "prospective members whose mailings were

returned as undeliverable and any prospective members for whom Defendants are unable to locate contact information"); *see Brabham v. Mega Tempering & Glass Corp.*, No. 13-CV-54 JG, 2013 WL 3357722, at *8  (E.D.N.Y. Jul. 3, 2013) (denying a request for the last four digits of potential opt-in plaintiffs' Social Security numbers); *Pippins v. KPMG LLP*, No. 11 Civ. 0377(CM)(JLC), 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("Plaintiffs have agreed to refrain from seeking potential opt-in plaintiffs' Social Security numbers for the time being, and will only request the numbers for individuals whose notices are returned as undeliverable."); *Rosario v. Valentine Avenue Discount Store, Co., Inc.*, 828 F.Supp.2d 508, 522 (E.D.N.Y.2011) ("If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for [the Social Security numbers of] those specific employees.").

As a general matter, the Court considers the Named Plaintiffs' request to be appropriate, as the information they seek will not be unduly burdensome or disruptive to Defendants' business operations. *See Sexton*, 2009 WL 1706535, at *13. Nevertheless, the Court denies the Named Plaintiffs' request for the Social Security numbers at this time due to privacy concerns.  If the Named Plaintiffs are unable to notify certain potential opt-in plaintiffs with the other information to be produced, they may renew their application for the Social Security numbers of those employees. Accordingly, the Court directs Defendants to provide the names, addresses, telephone numbers, known social media handles, dates of employment, titles, compensation rates, and hours worked per week for all persons employed by Defendants as hourly,

non-exempt, overtime-eligible employees since the date three years preceding this Memorandum and Order.  This information shall be provided to Named Plaintiffs on or before November 22, 2021.

## IV.   CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Named Plaintiffs' motion to amend their Complaint, and permits Named Plaintiffs to file an Amended Complaint to:  (1) add details of Defendants' uniform timekeeping system and rounding policy; (2) clarify the Named Plaintiffs' dates of employment, rates of pay, and hours worked following the exchange of document discovery; (3) add class claims based on Samuel's testimony as to the number of employees employed across JVK's three facilities; (4) add a claim for unpaid spread of hours wages under NYLL; (5) add claims for unpaid minimum wage and overtime violations pursuant to the NJWHL; and (6) add a claim for failure to timely pay wages pursuant to the NJWPL.

The Court grants in part and denies in part Named Plaintiffs' motion for conditional certification as follows:  (1) this matter is conditionally certified as a FLSA collective action, with the collective class defined as all hourly employees who worked for JVK Operations Limited at any time between May 21, 2016 and the present and who were subject to Defendants' automatic, fixed meal deduction and rounding policies; (2) a three-year statute of limitations is warranted, and will be tolled from the time the Named Plaintiffs initially filed the instant action to the date of this Memorandum and Order; (3) Defendants are directed to produce a computer-readable

data file containing the names, addresses, telephone numbers, known social media handles, dates of employment, titles, compensation rates, and hours worked per week for all potential opt-in members on or before November 22, 2021; and (4) the Named Plaintiffs are authorized to disseminate the final approved notice and opt-in forms via first class mail, text message, and social media within two weeks of the Court's approval of the final version, as well as to send a reminder notice, and Defendants are directed to conspicuously post the approved notice and opt-in forms at all JVK facilities.

Dated:      Central Islip, New York
            November 8, 2021

                              **SO ORDERED**

                              /s/ Steven I. Locke
                              STEVEN I. LOCKE
                              United States Magistrate Judge