UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KENIA MONTIEL-FLORES and
ALMANELLY RIVERA ZUNIGA,
*individually and on behalf of all others*
*similarly situated*,

                             Plaintiffs,

   -against-

JVK OPERATIONS LIMITED and VINOD
SAMUEL,

                           Defendants.
-----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

19-CV-3005 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this wage and hour litigation on referral from the Honorable Joanna Seybert for Report and Recommendation are: (i) Defendants' JVK Operations Limited ("JVK") and Vinod Samuel ("Samuel," together "Defendants") motion to decertify the conditionally certified Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, collective action; and (ii) Plaintiffs Kenia Montiel-Flores's ("Montiel-Flores") and Almanelly Rivera Zuniga's ("Zuniga," together the "Named Plaintiffs") motion for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3). *See* Defendants' Memorandum of Law in Support of Motion to Decertify the "Conditionally Certified" FLSA Collective Action ("Defendants' Motion" or "Defs.' Mem."), Docket Entry ("DE") [58-5]; Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Plaintiffs' Motion" or "Pls.' Mem."), DE [54].

By way of Complaint dated May 21, 2019, followed by an Amended Complaint dated November 23, 2021, the Named Plaintiffs, individually and on behalf of all

others similarly situated, commenced this action against Defendants for:  (i) failure to pay minimum wage in violation of the FLSA; (ii) failure to pay overtime wages in violation of the FLSA; (iii) failure to pay minimum wage in violation of the New York Labor Law ("NYLL"); (iv) failure to pay overtime wages in violation of the NYLL; (v) failure to provide spread of hours pay in violation of the NYLL; (vi) failure to provide payroll notices as required by the NYLL; (vii) failure to provide wage statements as required by the NYLL; (viii) failure to timely pay wages in violation of the NYLL; (ix) failure to pay minimum wage in violation of the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56(a) *et seq.* ("NJWHL"); (x) failure to pay overtime wages in violation of the NJWHL; and (xi) failure to pay timely wages in violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPL").  *See* Complaint ("Compl."), DE [1]; Amended Complaint ("AC"), DE [35].  The first and second causes of action, arising under the FLSA, are brought by the Named Plaintiffs on behalf of themselves and similarly situated persons who were employed by Defendants three years prior to the filing of the Complaint, which is May 21, 2016 (the "FLSA Collective Plaintiffs"). The third through eighth causes of action arising under the NYLL, and the ninth through eleventh causes of action under New Jersey law are brought by the Named Plaintiffs as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all other similarly situated individuals who were employed by Defendants in the States of New York and New Jersey since six years prior to the filing of the Complaint, which is May 21, 2013 (the "Rule 23 Class").

Defendants seek to decertify the conditionally certified FLSA collective action, which the Named Plaintiffs oppose and cross-move for the Court to grant final certification. *See* Defs.' Mem.; Memorandum of Law in Opposition to Defendants' Motion to Decertify the Conditionally Certified FLSA Collective Action and in Support of Plaintiffs' Request to Grant Final Certification ("Pls.' Opp."). The Named Plaintiffs also seek class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3) for its state-law claims, which Defendants oppose. *See* Pls'. Mem.; Defendants' Opposition to Plaintiffs' Motion for Class Certification Pursuant to Rule 23 ("Defs.' Opp."). For the reasons set forth below, the Court respectfully recommends: (i) denying Defendants' motion to decertify the FLSA collective action and granting the Named Plaintiffs' cross-motion for final certification, and (ii) granting the Named Plaintiffs' motion for class certification.

## I.    BACKGROUND

The following facts are taken from the Amended Complaint and the parties' submissions, declarations and exhibits included in their motions.

### A. Facts Regarding the Parties

Defendant JVK is a laundromat that provides dry cleaning and laundry services to hospitals and hotels and is a New York corporation with its principal place of business located at 130 New Highway, Amityville, New York 11701 ("130 New Highway"). *See* AC ¶ 6. JVK also operates facilities at 166 New Highway, Amityville, New York 11701 ("166 New Highway") and 521 S. Black Horse Pike, Blackwood, New Jersey 08012 ("Black Horse Pike"). *See* Pls.' Mem. Exhibit ("Ex.") A, DE [54-3] and Pls.' Opp. Ex. 9, DE [62-6], Transcript of the Deposition of Vinod Samuel Dated May

17, 2021 ("Samuel Tr."), at 15:9-21; Pls.' Mem. Ex. B, DE [54-3], Transcript of the Rule 30(b)(6) Deposition of Mustafa Zencir Dated July 16, 2021 ("Zencir Tr.") at 19:13-19. JVK's facilities at 130 New Highway and Black Horse Pike have similar departmental structures, while 166 New Highway is a smaller facility where only uniforms are processed and has nine or ten employees. Samuel Tr. at 21:23-23:22. 130 New Highway is also JVK's headquarters, housing its accounting and human resources departments. *Id*. at 14:19-15:3. Defendant Samuel is an owner and Chief Executive Officer of JVK who oversees policy decisions and exercises control over JVK's operations with the ability to hire, fire and discipline employees, set their work schedules and conditions of employment, determine their rates and methods of payment, and maintain employment records. AC ¶¶ 10-12; Defs.' Mem. Ex. 1, Declaration of Vinod Samuel ("Samuel Decl."), DE [58-2] ¶¶ 12-13.

The Named Plaintiffs are both New York residents. *Id.* ¶ 5. Montiel-Flores worked at JVK as a clothing sorter at its 130 New Highway location, from June 2017 through October 2017, and again from December 2017 through July 2018. *See* Pls.' Mem. Ex. C, April 8, 2021 Declaration of Kenia Montiel-Flores ("Montiel-Flores Decl."), DE [54-4] ¶¶ 3-4. Zuniga also worked as a clothing sorter at JVK's 130 New Highway facility from June 2017 through November 2017, and again from April 2018 through February 2019, at which time she went by the name Gisel Juarez Diaz. Pls.' Mem. Ex. D, April 9, 2021 Declaration of Almanelly Rivera Zuniga ("Zuniga Decl."), DE [54-5] ¶¶ 3-5. As clothing sorters, their job duties included, *inter alia*, classifying

clothing and dividing the clothing into different categories.  Montiel-Flores Decl. ¶ 4; Zuniga Decl. ¶ 5.

The Named Plaintiffs' hours varied throughout their employment with Defendants, but they both occasionally worked more than 40 hours per week.  *See* AC ¶¶ 51, 57; Montiel-Flores Decl. ¶ 5; Zuniga Decl. ¶ 6.  They were each typically afforded meal breaks of no more than 30 minutes during their shifts.  AC ¶¶ 52, 58; Montiel-Flores Decl. ¶ 8; Zuniga Decl. ¶ 9.  Defendants paid Montiel-Flores a regular hourly rate of $10 per hour in 2017, and $11 per hour in 2018.  AC ¶ 53; Montiel-Flores Decl. ¶ 6.  Zuniga received a regular hourly rate of $10 per hour in 2017, $11 per hour in 2018 and $12 per hour in 2019.  AC ¶ 59; Zuniga Decl. ¶ 7.  Defendants paid the Named Plaintiffs overtime at a rate of one and one-half times their regular hourly rate of pay for hours worked over 40 per week.  Montiel-Flores Decl. ¶ 7; Zuniga Decl. ¶ 6.

Defendants employed numerous other nonexempt employees within the last six years who were compensated at similar rates of pay and by the same methods as the Named Plaintiffs.  Montiel-Flores Decl. ¶ 23; Zuniga Decl. ¶ 24.  While employed with Defendants, the Named Plaintiffs, the proposed FLSA Collective Plaintiffs and the proposed Rule 23 Class Members were nonexempt employees pursuant to the FLSA, NYLL, NJWHL, NJWPL, and New Jersey Wage Theft Act, ("NJWTA"),[1] and were entitled to minimum wages, overtime compensation and spread of hours pay.  AC ¶ 60.  At all relevant times, all members of each of these groups were required to

---

[1] Although the NJWTA is referenced in the Amended Complaint, it is never invoked to allege a cause of action.

punch in and out for their shifts, using Defendants' electronic timekeeping system that applied facial recognition software.  AC ¶ 61; Montiel-Flores Decl. ¶ 9; Zuniga Decl. ¶ 10; Samuel Decl. ¶16.  While they typically took daily meal breaks during their shifts, Defendants did not require the Named Plaintiffs, the FLSA Collective Plaintiffs, or the Rule 23 Class Members to punch out at the start of their meal breaks or punch in at the end of their meal breaks.  AC ¶ 62; *see* Samuel Decl. ¶¶ 9, 16.  Rather, Defendants implemented a policy under which they automatically deducted 30 minutes from these individuals' daily work hours, regardless of the actual length of their meal breaks.  AC ¶ 63; Montiel-Flores Decl. ¶¶ 15-16; Zuniga Decl. ¶¶ 16-17; Samuel Decl. ¶ 9.  Defendants also implemented a policy under which they rounded these employees' daily work hours to a quarter of an hour, which occasionally resulted in the daily totals being rounded up, but according to the Named Plaintiffs, "for the vast majority of days," their hours were rounded down.  AC ¶¶ 64-65; Montiel-Flores Decl. ¶¶ 18-22; Zuniga Decl. ¶¶ 19-22; *see* Defs.' Mem. Ex. 2, Declaration of Mustafa Zencir ("Zencir Decl.") ¶ 6.  The Named Plaintiffs claim that the fixed meal deduction and rounding policies resulted in these individuals working more hours than the number for which they were paid, and therefore, they were not paid minimum wage or overtime wages for hours worked over 40 in certain weeks.  AC ¶¶ 66-67; Montiel-Flores Decl. ¶¶ 22-29; Zuniga Decl. ¶¶ 23-28.

### B. Facts Regarding the FLSA Collective Action Plaintiffs

The conditionally certified FLSA collective action includes hourly workers who worked for JVK at any time between May 21, 2016 and the present, and who were

subject to Defendants' automatic, fixed meal deduction and rounding policies. *See* DE [34] at 12. This group includes the Named Plaintiffs and 81 opt-in plaintiffs (the "FLSA Collective Plaintiffs") who worked as nonexempt hourly employees at Defendants' commercial laundry facilities in New York and New Jersey. *See id.*; Pls.' Opp. at 3; Zencir Decl. ¶ 8. Defendants' two main plants operated the same departments – soil, wash, dryer, ironing, fluff or fold, and distribution – while the third facility operated a special department for uniforms and only had nine or ten employees. Samuel Decl. ¶ 8; Samuel Tr. at 21:23-23:25. All three facilities were run by a single operations manager, and the two main plants had similar management structures. Samuel Tr. at 24:8-25:17. The departments within Defendants' facilities operated like assembly lines where all workers were required to be present for the line to operate. Samuel Decl. ¶ 8; Samuel Tr. at 58:14-59:4; Zencir Decl. ¶ 13. All employees on the same shift within the same department began and ended their workdays at the same time and took breaks at the same time. Samuel Decl. ¶¶ 8-9, 15; Samuel Tr. at 58:14-59:4; Zencir Decl. ¶¶ 13-14.

Defendants pay all nonexempt hourly employees a regular hourly rate at or slightly above the applicable state minimum wage rate. Samuel Decl. ¶ 16; Samuel Tr. at 53:6-54:14. All of Defendants' payroll is processed by JVK's accounting or human resources departments and then provided to its payroll provider, which has remained the same since 2006. Samuel Tr. at 62:22-65:6. Moreover, Defendants implemented their timekeeping system approximately ten years ago. Samuel Tr. at 54:15-57:13. It tracks the hours of all nonexempt hourly employees at each of

Defendants' locations. Samuel Tr. at 54:15-57:13. The software that operates Defendants' timekeeping system rounds all nonexempt hourly employees' punch in and out times to the nearest quarter of an hour. Samuel Decl. ¶ 16; Samuel Tr. at 74:4-77:18; Pls.' Opp. Ex. 10, Transcript of the Deposition of Mustafa Zencir ("Zencir Tr.") at 36:20-38:9. This policy rounds time up or down based on a seven minute assumption; *i.e.*, if the employee punched in more than seven minutes before her start time, the timekeeping system would round back to the nearest quarter of an hour, if the employee punched in less than seven minutes before her start time, the timekeeping system would round the time up to the nearest quarter of an hour; and, if the employee punched in less than seven minutes after her start time, the timekeeping system would round the time back to the nearest quarter of an hour. Zencir Decl. ¶ 6; *see* Samuel Decl. ¶¶ 16, 21. Defendants' timekeeping system also automatically deducts 30 minutes from each nonexempt hourly employee's daily work hours if the employee's shift is longer than six hours. Samuel Decl. ¶¶ 9, 16; Zencir Decl. ¶ 12; Zencir Tr. at 72:9-73:21.

The FLSA Collective Plaintiffs allege that they were "victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them minimum and overtime wages and other pay," as a result of Defendants' practice of rounding hours worked and deducting a fixed amount of time for meals regardless of the length of breaks. AC ¶¶ 18-20. They further claim that these unlawful wage and hour practices were uniformly implemented at all of their facilities in New York and New Jersey. AC ¶ 21.

### C.  Facts Regarding the Rule 23 Class Members

The proposed Rule 23 Class includes the Named Plaintiffs and approximately 2,000 similarly situated nonexempt hourly employees who were employed by Defendants in New York and New Jersey since the date six years prior to the filing of the Complaint, and who had "the same or substantially similar" job duties as the Named Plaintiffs (the "Rule 23 Class Members").  AC ¶¶ 24-25, 27; Pls.' Mem. at 7.[2] The Rule 23 Class Members worked as clothing sorters and in other nonexempt positions in both the New York facilities and the New Jersey Facility had the similar job duties and responsibilities.  Zencir Tr. at 54:7-55:24.  Class members were paid in the same manner and pursuant to the same wage and hour policies, plans and practices as the Named Plaintiffs.  *See* AC ¶ 25; Montiel-Flores Decl. ¶ 23; Zuniga Decl. ¶ 24; Samuel Decl. ¶¶ 16, 21.  Indeed, Defendants' policies and practices did not vary from employee to employee and were applied uniformly to all nonexempt employees who worked at the New York and New Jersey facilities during the relevant period.  Zencir Tr. at 35:16-38:9; Montiel-Flores Decl. ¶ 23; Zuniga Decl. ¶ 24.

Specifically, Defendants' nonexempt employees routinely took meal and/or rest breaks that varied each day, typically lasting between fifteen and thirty minutes, but Defendants automatically deducted 30 minutes from the Rule 23 Class Members daily work hours, regardless of the actual length of time taken.  Montiel-Flores Decl. ¶ 15; Zuniga Decl. ¶ 16; Samuel Decl. ¶¶ 9, 16.  Moreover, after deducting this time,

---

[2] The statute of limitations for wage and hour claims in New York and New Jersey is six years. *See* N.Y. Lab Law §§ 198(3), 663(3); N.J. Stat. Ann. § 34:11-56a25.1; *Atis v. Freedom Mortg. Corp.*, No. CV 15-3424 (RBK/JS), 2016 WL 7440465, at *3 (D.N.J. Dec. 27, 2016).

Defendants rounded daily work hours to a quarter of an hour as set forth above, and according to the Rule 23 Class Members, almost always rounded down.  Montiel-Flores Decl. ¶¶ 18-21; Zuniga Decl. ¶¶ 19-22.  As a result, the Rule 23 Class Members claim that were not compensated at the minimum wage rate for all hours they worked or at proper overtime rates for each hour they worked in excess of forty hours per week.  Montiel-Flores Decl. ¶ 22; Zuniga Decl. ¶ 23.

### D. Procedural History

Based on the above, the Named Plaintiffs commenced this action against Defendants on May 21, 2019. *See* Compl. The original Complaint asserted seven causes of action, brought on behalf of the Named Plaintiffs and those similarly situated, for:  (i) failure to pay minimum wage in violation of the FLSA; (ii) failure to pay overtime wages in violation of the FLSA; (iii) failure to pay minimum wage in violation of the NYLL; (iv) failure to pay overtime wages in violation of the NYLL; (v) failure to provide payroll notices as required by the NYLL; (vi) failure to provide wage statements as required by the NYLL; and (vii) failure to timely pay wages in violation of the NYLL.  *See generally* Compl.  On July 9, 2021, the Named Plaintiffs filed a motion for leave to amend the Complaint, *see* DE [23], and on August 20, 2021, they filed a motion to certify the FLSA collective action. *See* DE [29]-[30].  This Court granted in part and denied in part the motion to amend the Complaint, allowing the Named Plaintiffs to add certain clarifying allegations as well as add causes of action for unpaid spread of hours wages under the NYLL, unpaid minimum wage and overtime violations pursuant to the NJWHL, and failure to timely pay wages

pursuant to the NJWPL, but denied leave to amend as to the proposed NJWPL claim for unpaid overtime.  *See* DE [34] at 11-12.  Further, the Court granted in part and denied in part Plaintiffs' motion for conditional certification defining the collective action as:  all hourly workers who worked for JVK Operations Limited at any time between May 21, 2016 and the present and who were subject to Defendants' automatic, fixed meal deduction and rounding policies.  *See* DE [34] at 12.  On December 16, 2021, the Named Plaintiffs submitted, and this Court approved, the final opt-in notice, which was then disseminated to prospective collective members. *See* DE [38-1]; December 17, 2021 Electronic Order.  Eighty-one individuals consented to join the case.  *See* Defs.' Mem. at 3; Pls.' Opp. at 2.

On December 9, 2022, the Named Plaintiffs filed their motion for class certification as to the state-law claims, which Defendants oppose.  *See* Pls.' Mem.; Defs.' Opp.  On February 10, 2023, Defendants filed their motion to decertify the FLSA collective action, which the Named Plaintiffs oppose and cross-move for final certification.  *See* Defs.' Mem; Pls.' Opp.  On April 27, 2023 Judge Seybert referred both motions to this Court for a report and recommendation.  April 27, 2023 Electronic Order.  For the reasons set forth below, the Court respectfully recommends:  (i) denying Defendants' motion to decertify the FLSA collective action and granting the Named Plaintiffs' cross-motion for final certification, and (ii) granting the Named Plaintiffs' motion for class certification.

## II.   DISCUSSION

11

Defendants move to decertify the conditionally certified FLSA collective action, which pertains to the first and second causes of action for failure to pay the minimum wage and overtime in violation of the FLSA. *See* Defs.' Mem. The Named Plaintiffs oppose and request final certification of the conditionally certified collective action. *See* Pls.' Opp. Next, the Named Plaintiffs seek class certification under Rule 23 for their state law claims, which Defendants oppose. *See* Pls.' Mem.; Defs.' Opp. The Court addresses each motion separately.

### A. FLSA § 216(b) Certification

The FLSA permits employees to maintain a collective action "for and [o]n behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). Courts in the Second Circuit apply a two-step analysis to determine whether a collective action should be certified under Section 216(b) of the FLSA. *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). Initially, the Court evaluates whether the proposed class members are "similarly situated" to the Named Plaintiffs. *See Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001). If the Court finds that the putative class is sufficiently similarly situated, the action will be conditionally certified, and each member may then consent in writing to "opt-in" to the litigation. *Id.* (citing 29 U.S.C. § 216(b)). In determining whether the putative collective action members are similarly situated, the critical inquiry is "not whether plaintiff's job duties are identical to other potential opt-in plaintiffs, but rather, whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the

law has been violated." *Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 656 (S.D.N.Y. 2017) (internal quotation marks and citation omitted).

Because this Court has already conditionally certified the collective action, it now proceeds to the second step of the inquiry: "to determine with the benefit of a fuller record whether the opt-in plaintiffs are in fact 'similarly situated' to the named plaintiffs." *Pino v. Harris Water Main & Sewer Contractors Inc.*, No. 17CV5910KAMRER, 2020 WL 5708889, at *3 (E.D.N.Y. Sep. 23, 2020) (citing *Myers*, 624 F.3d at 555). The second step generally occurs following completion of discovery and requires examination of the evidentiary record to ascertain whether the opt-in plaintiffs are, in fact, similarly situated. *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009). "Neither the FLSA nor its implementing regulations define 'similarly situated,'" however. *Pino*, 2020 WL 5708889, at *3 (quoting *Summa v. Hofstra University*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010) (other citation omitted)). In interpreting the FLSA, district courts in the Second Circuit have historically applied "heightened scrutiny in determining whether plaintiffs are similarly situated for the purposes of the FLSA." *Desilva v. North Shore-Long Island Jewish Health Sys. Inc.*, 27 F. Supp. 3d 313, 319 (E.D.N.Y. 2014). As such, district courts use the so-called "ad hoc" test where they analyze the following factors: '(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.'" *Id.* at 320 (quoting *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008)).

13

In *Scott v. Chipotle Mexican Grill, Inc.*, the Second Circuit recently clarified that "'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some *material* aspect of their litigation." 954 F.3d 502, 516 (2d Cir. 2020) (emphasis in original).  In its review of the ad hoc approach, the Second Circuit stated that district courts should consider whether "party plaintiffs are similarly situated, and may proceed in a collective action, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims."  *Id.* (citation omitted).  And if so, "'dissimilarities in other respects should not defeat collective treatment.'" *Id.* (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018)).  As a result, the district court should consider "if the evidentiary record supports a finding that the collective action plaintiffs share a common question of law or fact that renders the plaintiffs 'similar,' rather than the approach frowned upon by the Second Circuit that considers whether the 'plaintiffs are factually disparate.'" *Pino*, 2020 WL 5708889, at *3 (quoting *Scott*, 954 F.3d at 517) (applying the ad hoc approach modified based on the *Scott* decision).[3]

Applying the similarly situated test, the FLSA Collective Plaintiffs have sufficiently demonstrated that the case can proceed as a collective action, and Defendants' motion for decertification should be denied.  These plaintiffs are similarly situated because the Defendants' timekeeping policies of rounding to the nearest

---

[3] Courts in this district have noted that it is an "open question of 'whether the ad hoc test remains a viable tool in this circuit'" after *Scott*. *See Dieffenbauch v. Rhinehart R.R. Constr., Inc.*, No. 817CV1180LEKCFH, 2021 WL 365850, at *2 (N.D.N.Y. Feb. 3, 2021) (quoting *Vecchio v. Quest Diagnostics, Inc.*, No. 16-CV-5165, 2020 WL 5604080, at *11 (S.D.N.Y. Sep. 18, 2020)).  As a result, the Court applies both the "similarly situated" and the "ad hoc"—as modified by *Scott*—tests.

quarter hour and automatic 30-minute deduction for mealtime breaks was uniformly applied.  These two policies create common issues of fact among all FLSA Collective Plaintiffs.  Defendants contend that their rounding and meal deduction policies were lawful as they were neutrally applied to all employees, *see* Defs.' Opp. at 7, 11, but "'the extent, existence, and lawfulness of these company-wide policies are issues for the finder of fact at trial,'" and are "' issues that are subject to generalized proof,'" which makes them appropriate to proceed on a collective action-wide basis.  *Dieffenbauch*, 2021 WL 365850, at \*3 (quoting *Alonso v. Uncle Jack's Steakhouse, Inc.,* No. 08-CV-7813, 2011 WL 4389636, at \*3, (S.D.N.Y. Sep. 21, 2011) (denying decertification)).  Indeed, whether these policies violated the FLSA are questions to be determined at summary judgment or trial and, in fact, underscore the similarities among the FLSA Collective Plaintiffs as these common questions are material to the disposition of their FLSA claims.  Accordingly, because the FLSA Collective Plaintiffs have demonstrated that they are similarly situated, the Court recommends denying Defendants' motion for decertification and granting Plaintiffs' cross-motion for final certification of the FLSA collective action.

Applying the ad hoc approach, the Court similarly concludes that the collective action should be certified.  Initially, the FLSA Collective Plaintiffs have shown that their positions were similar in their employment setting.  The departments within Defendants' three facilities operated like assembly lines where all workers were required to be present for the line to operate, and all employees on the same shift within the same department began and ended their workdays at the same time and

15

took breaks at the same time. Samuel Decl. ¶¶ 8-9, 15; Zencir Decl. ¶¶ 13-14; Samuel Tr. at 58:14-59:4. Each employee was required to punch in and out for their shifts, using Defendants' electronic timekeeping system. AC ¶ 61; Montiel-Flores Decl. ¶ 9; Zuniga Decl. ¶ 10. Defendants automatically deducted 30 minutes from these individuals' daily work hours, regardless of the actual length of their meal breaks and rounded employees' daily work hours to a quarter of an hour. AC ¶¶ 63-65; Montiel-Flores Decl. ¶¶ 15-22; Zuniga Decl. ¶¶ 16-22; Samuel Decl. ¶ 9; Zencir Decl. ¶ 6. These policies were automatic and applied to all opt-in plaintiffs. Accordingly, because the FLSA Collective Action Plaintiffs are similarly situated in their employment setting, this first factor weighs against decertification.

Next, decertification is not warranted based on asserted individualized defenses. Defendants' policies of rounding punch in and out times to the nearest quarter of an hour and automatically deducting 30 minutes for mealtime breaks from all nonexempt hourly employees were uniform and company-wide. Defendants contend that the FLSA claims are subject to unique, individualized defenses such that employees were often properly compensated under their policy and that determining wages owed for unpaid overtime is an individualized assessment. Defs.' Mem. at 17-19. These considerations, however, are relevant to the damages analysis and do not merit decertification of the collective action. *Dieffenbauch*, 2021 WL 365850, at *4 (denying decertification and collecting cases). As a result, any individualized defenses do not warrant decertification.

16

Finally, fairness and procedural considerations weigh in favor of the FLSA claims proceeding as a collective action. Litigating minimum wage and overtime claims for each of these employees individually would be unduly burdensome on all parties. Further, permitting the FLSA Collective Plaintiffs to pool their resources in bringing their FLSA claims best serves the purposes of the statute. *See Pino*, 2020 WL 5708889, at *7 ("Fifteen plaintiffs have joined this action, and this court finds that litigating overtime claims for each of these plaintiffs individually would be unduly burdensome on all parties.") *McGlone v. Cont. Callers, Inc.*, 49 F. Supp. 3d 364, 369 (S.D.N.Y. 2014) ("Nineteen Plaintiffs have opted in to this action. Litigating overtime claims for each of these Plaintiffs individually would be burdensome on Plaintiffs, Defendants, and the courts. As a result, both fairness and procedural considerations weigh in favor of certifying the class."). Accordingly, fairness and procedural considerations weigh against decertification, and the Court recommends denying Defendants' motion and granting Plaintiffs' cross-motion for final certification of the FLSA collective action.

## B. Rule 23 Class Certification

Next, the Named Plaintiffs move for class certification as to their state law claims seeking to certify the following class: all nonexempt hourly employees who were employed by Defendants in their New York and New Jersey facilities since the date six years prior to the filing of the Complaint, which is May 21, 2013. *See* Pls.' Mem. Defendants oppose. *See* Defs.' Opp. For the reasons set forth below, the Court recommends granting class certification.

17

"In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the [Rule 23(a)] preconditions of . . . numerosity, commonality, typicality, and adequacy." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). "It may then consider granting class certification where it 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). Further, the Second Circuit has recognized an "implied requirement of ascertainability" for class certification. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006). "To be ascertainable, the class must be 'readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling.'" *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (quoting *McBean v. City of N.Y.*, 260 F.R.D. 120, 132-33 (S.D.N.Y. 2009)).

Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 234, 133 S. Ct. 2304, 2307 (2013); *Avila v. Ardian Corp.*, No. 18-CV-4795-FB-TAM, 2022 WL 3370024, at *2 (E.D.N.Y. Aug. 16, 2022). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule," and "be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011). "[C]ertification is proper only if 'the trial court is satisfied,

18

after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 350-51 (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982)). The district court is afforded broad discretion in determining class certification because it is often in the "best position to assess the propriety of the class action." *Pino v. Harris Water Main & Sewer Contractors Inc.*, No. 17CV5910KAMRER, 2021 WL 3675148, at *3-4 (E.D.N.Y. Aug. 19, 2021) (citing *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001)).

### 1. Numerosity

Initially, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Impracticable does not mean impossible, but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Central States Se. and Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC,* 504 F.3d 229, 244-45 (2d Cir. 2007). "[N]umerosity is presumed at a level of 40 members . . . ." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 Newberg on Class Actions § 3.05 (2d ed. 1985)); *see Avila*, 2022 WL 3370024, at *2.

Here, the proposed Rule 23 Class includes more than 2,000 current and former nonexempt employees at JVK's New York and New Jersey facilities who were subject to the same pay policies as the Named Plaintiffs. AC ¶¶ 24-25, 27; Pls.' Mem. at 7; Defs.' Opp. at 19. These individuals had 30 minutes automatically deducted from their daily work hours for meal and/or rest breaks regardless of the actual length of

each break and had their daily work hours rounded to a quarter hour. Montiel-Flores Decl. ¶¶ 15, 18-21; Zuniga Decl. ¶¶ 16, 19-22; Samuel Decl. ¶¶ 9, 16. Because this putative class will have in excess of 2,000 individuals, the numerosity requirement is satisfied.

### 2. Commonality

Next, the Court must find that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350, 131 S. Ct. at 2551. "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-cv-3765 (JBW), 2012 WL 1107711, at \*7 (E.D.N.Y. Apr. 2, 2012) (citation omitted). "Commonality may be met even though class members' individual circumstances differ, so long as their injuries derive from a unitary course of conduct." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (quoting *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004)) (internal quotation marks omitted); *see Pino*, 2021 WL 3675148, at \*5.

Applying these standards, the Court concludes that common questions of law and fact exist such that they are best resolved classwide. The Named Plaintiffs sufficiently demonstrate, and Defendants do not contest, that the timekeeping

policies of meal deductions and rounding were uniformly applied to all proposed class members. While Defendants assert that these policies were lawful because they were neutrally applied and did not systemically undercompensate employees, *see* Defs.' Opp. at 8-10, those issues address the merits of Plaintiffs' claims and, therefore, are better addressed at summary judgment or trial. Indeed, this contention demonstrates that common questions of law and fact exist between all class members because their claims will rise or fall based on the legality of the uniformly applied policies. Accordingly, the Court concludes that commonality exists.

### 3. *Typicality*

Further, the Named Plaintiffs' claims are "typical" of the proposed class. Fed. R. Civ. P. 23(a)(3). The requirements of commonality and typicality "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3). *Marisol A. v. Giulianai*, 126 F. 3d 372, 376 (2d Cir. 1997) (citation omitted). Typicality occurs when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). "In a wage case, the typicality requirement is satisfied where the named plaintiff and proposed class members 'were subject to the same general employment scheme,' and their claims are based on 'the same course of events and legal theory.'" *Pino*, 2021 WL 3675148, at *8 (quoting *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 105 (E.D.N.Y. 2011)).

For reasons similar to the determination that commonality exists, the Court concludes that the typicality requirement is met.  The alleged harms suffered by the Named Plaintiffs are typical of those of the class they seek to represent.  Like each proposed class member, Montiel-Flores and Zuniga were subject to JVK's rounding and meal deduction policies, which they contend resulted in not being paid their full statutorily-required wages.  Defendants argue that the Named Plaintiffs have failed to present evidence of improper rounding and mealtime deduction policies because they were applied neutrally and that claims for damages can only be resolved on a case-by-case basis.  *See* Defs.' Opp. at 22.  These contentions, however, concern the question of the legality of the policies themselves.  These arguments are better reserved for a summary judgment motion or trial, not class certification, and underscore that the fact that the Named Plaintiffs' legal theory is the same as the Rule 23 Class Members making their claims typical.  Accordingly, the Court concludes that the typicality requirement is satisfied.

### 4. Adequacy

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy inquiry involves two steps: (1) the named plaintiffs must 'demonstrate that class counsel is qualified, experienced and generally able to conduct the litigation,' and (2) that 'there is no conflict of interest between the named plaintiffs and other members of the plaintiff's class.'"  *Pino*, 2021 WL 3675148, at *9; (quoting *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. May 24, 2001)).

Here, the Named Plaintiffs and all class members are subject to the same timekeeping policies, and Montiel-Flores and Zuniga assert that they will vigorously litigate the class's shared grievances against Defendants and have no interests antagonistic to those of other class members.  Further, the proposed Class Counsel, Hach Rose Schirripa & Cheverie LLP, state that they will vigorously prosecute this action on behalf of the Named Plaintiffs and the Rule 23 Class Members.  Indeed, Class Counsel has investigated this case thoroughly, obtained conditional certification under the FLSA, *see* DE [34], and have substantial resources and experience as lead counsel in wage and hour class actions.  *See* Declaration of Frank R. Schirripa, DE [54-1] ¶¶ 8-23; Declaration of Kenneth J. Katz, Esq., DE [54-7], at ¶¶ 1-11.  Moreover, Defendants do not contest the adequacy of the Named Plaintiffs or Class Counsel.  Accordingly, the Court concludes that adequacy threshold is met.

### 5. *Ascertainability*

The Second Circuit has established a fifth prerequisite to class certification, ascertainability, which demands that a class be "'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'"  *In re Petrobas Sec. Lit.*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)).  "A class is ascertainable when defined by objective criteria . . . and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher*, 806 F.3d at 24-25.  "The court must be able to determine who is in the class 'without having to answer numerous individualized fact-intensive questions.'"  *Pino*, 2021 WL 3675148, at *9

(quoting *Fogarazzo v. Lehman Bros.*, 232 F.R.D 176, 181 (S.D.N.Y. 2005) (quotation and alteration omitted)).

Here, the Court concludes that the class members are ascertainable. The Named Plaintiffs seek to certify the following class: all nonexempt hourly employees employed by Defendants in their New York and New Jersey facilities since the date six years prior to the filing of the Complaint, which is May 21, 2013. The definition is based on objective criteria, and Court is able to determine who is in the class without having to answer numerous individualized questions. Further, the proposed class members in both the New York and New Jersey facilities had the same job duties and responsibilities, and the proposed Rule 23 Class Members used the same timekeeping system and were subject to the same practices, including the use of the same technology to clock in and out for their shifts, the data from which was sent to Defendants' payroll company for processing. Samuel Tr. at 53:6-63:10. Defendants' policies regarding automatic deductions for meal breaks and the rounding of employees' work hours were applied uniformly to all nonexempt employees who worked at Defendants' three facilities during the relevant period. Moreover, "because defendants were able to provide plaintiffs with list of individuals who were members of the conditionally certified FLSA collective action, defendants would also be able to create a list of individuals who are potential members" of the certified class. *Atakhanova v. Home Fam. Care, Inc.*, No. 16-cv-6707 (KAM)(RML), 2020 WL 4207437, at *7 (E.D.N.Y. Jul. 22, 2020) (citing *Marin v. Apple-Metro, Inc.*, No. 12-cv-

5274 (ENV)(CLP), 2017 WL 4950009, at *48 (E.D.N.Y. Oct. 4, 2017)).  Accordingly, the Court finds that the ascertainability requirement is satisfied.

### 6. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 117 S. Ct. 2231, 2249 (1997).  "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 55 (E.D.N.Y. 2019) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).  "District courts 'have routinely found that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices.'"  *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13-cv-5124 (AT), 2015 WL 5813382, at *5 (S.D.N.Y. Sep. 28, 2015) (quoting *Murphy v. LaJaunie*, No. 13 Civ. 6503, 2015 WL 4528140, at *7 (S.D.N.Y. Jul. 24, 2015)).

Applying these standards, the Court concludes that the predominance requirement is satisfied.  Plaintiffs have demonstrated that common questions of law and fact predominate this case because all of JVK's nonexempt employees share a similar mix of job duties, carried out within the same constraints imposed by JVK through their timekeeping policies.  While Defendants contend that individual

inquiries related to analysis of hours worked by JVK employees in the putative class exist and that their rounding policy is lawful or violated rights on a "*de minimis* basis,*" see* Defs.' Opp. at 23-24, the resolution of the legality of Defendants' consistently applied policies are issues that predominate this case.   Indeed, Defendants will likely be liable to all parties or none.   Further, individualized questions as to damages do not defeat predominance as to the common questions surrounding Defendants' pay policies. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54, 136 S. Ct. 1036, 1045 (2016)) (When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3), even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.").   Accordingly, the Court concludes that predominance is satisfied.

### 7. *Superiority*

Finally, to proceed under Rule 23(b)(3), a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).   "'Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policies, the damages suffered are small relative to the expense and burden of individual litigation, and some potential class members are currently employed by the defendants.'" *Pino*, 2021 WL 3675148, at *11 (quoting *Fonseca*, 2015 WL 5813382, at *6).

26

Here, the Court concludes that a class action is a superior method of adjudicating this case. The proposed class includes over 2,000 individuals and litigating the claims for each of these plaintiffs individually would be unduly burdensome on all parties, and class members might not pursue their claims as a result. *See Torres v. Gristede's Operating Corp.*, No. 04-cv-3316 (PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sep. 29, 2006) ("Because litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually.") (citations omitted). Further, as Defendants point out, most members of the proposed class have not suffered large enough damages to warrant each member funding individual litigation, and so the Rule 23 Class Members do not have an interest in controlling the prosecution of separate actions. Accordingly, the Court concludes that a class action is superior to other methods of adjudicating the claims.

### III. CONCLUSION

For the reasons set forth above, the Court recommends: (i) denying Defendants' motion to decertify the FLSA collective action and granting the Named Plaintiffs' cross-motion for final certification, and (ii) granting the Named Plaintiffs' motion for class certification.

### IV. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer*

27

*v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
              August 1, 2023

                                      /s/ Steven I. Locke
                                      STEVEN I. LOCKE
                                      United States Magistrate Judge